**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Garvin Dale WHITE,
Defendant-Appellant.**

No. 82–3068.

United States Court of Appeals,
Fifth Circuit.

May 19, 1983.

Rehearing Denied June 13, 1983.

Garwood, Circuit Judge, filed opinion concurring in part and dissenting in part.

---

Robert G. Pugh, Jr., Shreveport, La., for defendant-appellant.

\* Circuit Judge of the Eleventh Circuit, sitting by designation.

J. Ransdell Keene, U.S. Atty., D.H. Perkins, Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before TUTTLE \*, RANDALL and GARWOOD, Circuit Judges.

TUTTLE, Circuit Judge:

The defendant-appellant, Garvin Dale White, was convicted of unlawfully and wilfully escaping from the custody of a United States Marshal in violation of 18 U.S.C. § 751(a). Because we find that an actual conflict of interest existed between the defendant and his counsel and that the trial court took inadequate steps to assure that the defendant's waiver of this conflict was knowing and voluntary, we reverse.

### A.

The defendant escaped from the City Jail of Shreveport, Louisiana, on November 1, 1980, while awaiting an appearance before a federal grand jury. At the time of his escape, the defendant was serving a five year term in federal custody for possession of marijuana with intent to distribute. On October 1, 1981, the defendant was recaptured in Jacksonville, Florida.

The defendant was charged with the felony of escape in the U.S. District Court for the Western District of Louisiana. On October 24, 1981, pursuant to a motion by the prosecuting Assistant United States Attorney, the court held a hearing to determine whether the trial counsel for the defendant, Mr. Jimmy Brumfield and Ms. Arax Brumfield, husband and wife, had a conflict of interest which would prevent them from representing the defendant; the prosecutor alleged that both defense attorneys were under investigation by a federal grand jury regarding their participation in the escape of the defendant from the Shreveport jail in November 1980.[1]

At the hearing, it was noted several times that the Brumfields were under investiga-

---

1. Mr. Brumfield was subsequently indicted and convicted of conspiring to aid and abet the

tion for complicity in the escape. Both Mr. Brumfield and the defendant testified that Brumfield had informed the defendant of the "difficulties" that were presented by the Brumfields' representation. The defendant was fully informed of his right to have Brumfield dismissed and was questioned extensively by the court regarding his awareness of the existence of a conflict.[2]

█ However, at no point does the record show that the court, the defense attorney,

or the prosecutor informed the defendant of the precise manner in which he might be prejudiced by Brumfield's representation. The failure of the trial court to ensure that the defendant was so informed constitutes a clear violation of the procedure prescribed in *U.S. v. Garcia*[3] for accepting a waiver of the right to conflict free representation. The defendant's waiver was thus deprived of the knowing, intelligent and voluntary nature required for the waiver of a constitutional right[4] and constituted an invalid

---

defendant's escape. At the time of this appeal, he was incarcerated in the federal penitentiary in Texarkana, Arkansas.

**2.** The court addressed the defendant as follows:
THE COURT: And the rights that belong to you are waivable. If you have a right for me to dismiss Mr. Brumfield because he has a conflict, I think you also have the right, fully informed of the conflict, to keep Mr. Brumfield. Before I can decide to dismiss Mr. Brumfield or not, I have to find out from you, with knowledge of that conflict, do you nevertheless wish him to be your lawyer or them, both of them? I'll put both of them in that question.
DEFENDANT WHITE: Do you want me to answer that now?
THE COURT: I do, sir.
DEFENDANT WHITE: I feel there is no conflict and I've selected to take both of them as my attorneys.
  *  *  *  *  *  *
THE COURT: Mr. White, this court has gotten from the United States knowledge that it knows that your lawyers are targets of an investigation into the matters surrounding your escape from the Shreveport City Jail in November of 1980. I have pointed out to you, sir, that it's possible that a conflict does exist between interests of your lawyers and your interests as a defendant being defended by those lawyers. You do understand the nature of the conflict which has been explained to you?
DEFENDANT WHITE: Yes, sir.
THE COURT: The fact that they have not been indicted is known to you, that there's no indictment presently in the federal system against either Mr. or Mrs. Brumfield?
DEFENDANT WHITE: Yes, sir.
THE COURT: Are you aware that it's possible that an indictment could occur at or about the time that you are going to be standing trial in this room on the morning of the fourteenth of December, and that while there isn't a great conflict seen by you now, that one could occur at or about that time?
DEFENDANT WHITE: I'm aware of that.

THE COURT: All right. Then if you are aware of that, and I have a personal belief that you fully understand the circumstances surrounding you?
  *  *  *  *  *  *
THE COURT: All right. Have you got any other questions?
DEFENDANT WHITE: No, sir.
  *  *  *  *  *  *
THE COURT: Mr. White, nobody has leaned on you, have they, to keep Mr. and Mrs. Brumfield on your counsel team, have they?
DEFENDANT WHITE: No, Your Honor.
THE COURT: And if you agree that the matter can proceed with them as your lawyer, am I to understand that this is a voluntary act on your part?
DEFENDANT WHITE: Yes, sir. I think I'm the only one that could determine that, because I know they didn't have anything to do with this. And as far as investigation on their part by the Government, I'm the one who knows what really happened. And that's one of the basis that I'm basing this on, that I know these two individual attorneys had nothing to do with it. So that helps me make that personal decision.
THE COURT: And you having been made aware of a possible conflict, you now under oath in open court waive such a conflict and wish to proceed to trial with your present representation of Mr. and Mrs. Brumfield?
DEFENDANT WHITE: Yes, sir. I'd like to do that.

**3.** 517 F.2d 272 (5th Cir.1972).

**4.** *See Brady v. Johnson,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970).
The *Brady* Court wrote that a waiver of a constitutional right must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 742, 90 S.Ct. at 1463. *See also Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), where the Court wrote that such waiver must

waiver of the defendant's Sixth Amendment right to effective assistance of counsel.

In *Garcia,* several criminal defendants sought to overturn a district court order disqualifying their attorneys for an impermissible conflict of interest. The Fifth Circuit reversed the trial court, holding that even if such a conflict existed, the defendants had the right to waive the disqualification of the attorneys arising from the conflict. The Court then outlined the procedure to be followed by a trial court to assure that a defendant's waiver meets constitutional guidelines.

The Court likened the procedure to that promulgated in Fed.R.Crim.P. 11 whereby a court accepts a defendant's plea of guilty. The Court wrote:

> As in Rule 11 procedures, the district court should address each defendant personally and *forthrightly advise him of the potential dangers of representation by a counsel with a conflict of interest* ... The court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, *that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict,* that he has discussed the matter with his attorney ... and that he voluntarily waives his Sixth Amendment protections. (Emphasis added).

517 F.2d at 278.

The actions of the trial court in this case fall short of these requirements. The trial court's apparent reliance on Brumfield's statement that he had informed the defendant of the dangers of the conflict of interest is especially misplaced since Brumfield potentially stood to gain from the conflict at the defendant's expense. This was not a case involving only farfetched or highly theoretical potential for conflict, but one where it might have been anticipated that Brumfield's conduct of the defense would have prejudiced the defendant in several ways, including: (1) Brumfield might not present detailed evidence regarding the circumstances of the escape for fear of incriminating himself; (2) Brumfield might not call certain witnesses or only cursorily examine others for fear of self-incrimination; (3) Brumfield, a witness to the escape, became ineligible to testify in his role as counsel, Model Code of Professional Responsibility DR 5–102; and (4) Brumfield would resist plea bargaining for fear that the defendant might turn state's evidence against him. In general, Brumfield might have conducted the defense with the primary motivation of distancing himself from the defendant and the events surrounding the escape.[5]

■ While this Court does not expect a trial judge to anticipate every possible detriment that might befall a defendant as the result of a conflict in a particular case, we do require at least some affirmative effort by the trial court to inform the defendant of the ways the conflict might operate to impact deleteriously upon the reasoned and competent presentation of his or her defense. *Garcia; Gray v. Estelle,* 616 F.2d 801, 804 (5th Cir.1980).[6] The district court's actions in the present case fall short of the

---

constitute an "intentional relinquishment or abandonment of a known right."

**5.** The government does not dispute that an actual conflict of interest existed in the present case. Though there exists no single definition of an "actual conflict," the circumstances of this case present a factual situation that unquestionably falls within the parameters of the term. *See, United States v. Salinas,* 618 F.2d 1092 (5th Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980).

**6.** In *United States v. Zajac,* 677 F.2d 61 (11th Cir.1982), the Eleventh Circuit likewise interpreted *Garcia* when it upheld the validity of a

waiver of conflict by jointly represented criminal defendants; the Court relied heavily on the fact that the trial court had stated to the defendants, "There's a possibility that [the defense attorney] would argue that the prior action of [defendant] Parks should not be attributed to the other two defendants, which could create a conflict of interest in the case and would tend to throw more blame on Mr. Parks than on the other two ..." *Id.* at 63. This kind of specific information is precisely the type that the defendant in the present case was not provided with prior to entering his waiver.

"affirmative judicial involvement in the waiver process" outlined in *Garcia*. 517 F.2d at 277. *See also, Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309, 320–21 (1948).

■ Our inquiry need not proceed further since this Court has consistently held that a criminal defendant represented by an attorney with an actual conflict of interest has received ineffective assistance of counsel as a matter of law; in such a situation, a reversal is automatic regardless of a showing of prejudice unless the defendant has knowingly and intelligently waived his constitutional right to conflict free representation.[7] Since no such waiver was present in this case, we reverse.[8]

### B.

While our reversal naturally nullifies the enhanced sentence imposed on the defendant in the court below, we find it desirable to address the defendant's objections to the enhancement of his sentence in order to guide the trial court in the possible retrial of this action and to avoid a potential ground for a subsequent appeal to this Court.

Prior to trial, the government filed notice of its intent to seek an enhanced sentence under the "dangerous special offender" provision of 18 U.S.C. § 3575. Pursuant to this notice, the trial court held a pre-sentence hearing on January 18, 1982. The court determined that the defendant was a dangerous special offender as defined by the statute and imposed a sentence of twelve and one-half years for the escape conviction, a violation that normally carries a five year maximum sentence.

The defendant contends that this enhanced sentence is invalid for a number of reasons. We may quickly dispose of each of these challenges.

■ First, the defendant notes that the trial court, unbeknownst to the government, was informed of the government's intent to seek an enhanced sentence prior to the commencement of the trial. The defendant urges that the enhanced sentence must thus be overturned since 18 U.S.C. § 3575(a) provides that the court may not be so informed "without the consent of the parties." *Accord, U.S. v. Bailey,* 537 F.2d 845 (5th Cir.1976), *cert. denied,* 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977). However, in *Bailey,* the *government prosecutor* informed the court of his intent to seek an enhanced sentence. The record in the present case makes it abundantly clear that the defense attorney, Mr. Brumfield, brought the government's intention to proceed under § 3575 to the court's attention. We do not perceive that Congress intended § 3575(a) to operate such that any defendant could block the prosecution from seeking an enhanced sentence simply by informing the court of the government's intent.

■ Second, the defendant contends that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. The Supreme Court has held that a punishment is excessive and unconstitutional if "it (1) makes no measurable contribution to acceptable goals of punishment, and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia,* 433 U.S. 584, 593, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). In the present case, where the defendant had been convicted of five prior felonies[9] (including two

---

**7.** *United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980), *cert. denied,* 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *Stephens v. United States,* 595 F.2d 1066, 1070 (5th Cir. 1979); *United States v. Alvarez,* 580 F.2d 1251, 1259 (5th Cir.1978).

**8.** The defendant also contends that the conflict in the present case was so grievous as to be incapable of waiver even by a fully-informed

defendant. Since we conclude that the trial court's inquiry was inadequate to ensure the knowing and intelligent nature of defendant White's waiver regardless of the severity of the conflict, this is a question we need not decide.

**9.** These convictions were: (1) November 1979 —possession of marijuana with intent to distribute; (2) May 1978—transportation of marijuana; (3) August 1967—auto theft; (4) April

drug trafficking convictions in the three years prior to his escape) and the court had adequate grounds for finding a "need to protect the public from future illegal actions on the defendant's part," we are unable to conclude that the sentence in this case meets the above standards. *See also, United States v. Bowdach,* 561 F.2d 1160 (5th Cir.1977) (Court upheld imposition under § 3575 of five year sentence for conviction of receiving weapons which carries maximum two year sentence).

Third, the defendant attacks the court's finding that he was a "special offender" under § 3575(e)(2); the defendant also contends that § 3575(e)(2) is void for vagueness. However, we decline to reach these contentions since the defendant unquestionably meets the alternative definition of a "special offender" in § 3575(e)(1).[10]

Finally, we find that the court adequately stated the grounds for its determination that the defendant was "dangerous" under § 3575(f).[11] We especially note the trial court's recognition of the defendant's "extensive and lucrative drug trafficking" as outlined in the pre-sentence report of December 27, 1979.

REVERSED.

GARWOOD, Circuit Judge, concurring in part and dissenting in part.

I concur in all of part B of Judge Tuttle's excellent opinion, and in most of what is stated in part A. I agree, for the reasons stated by Judge Tuttle, that there was a conflict of interest between White and his retained counsel the Brumfields, and that the conflict was of such a nature that White's conviction is subject to being set aside, regardless of whether actual prejudice is shown, if White did not knowingly and voluntarily waive the conflict. I also agree that the record before us falls short of affirmatively and unequivocally establishing that White was fully aware of the various precise, concrete ways in which he might be harmed by the Brumfields' representation of him in the face of their conflicting interests, and that the trial court's colloquy with White fell slightly short, in this respect, of the full treatment envisaged by *United States v. Garcia,* 517 F.2d 272, 278 (5th Cir.1975). On the other hand, the record does plainly establish that White was aware of the nature and factual basis of the conflict, and of what his alternatives were, and that he voluntarily, and without having been "leaned on," affirmatively and unequivocally resisted any suggestion that the Brumfields be replaced and elected to continue with them. Government counsel stated on the record, in White's presence, that the Brumfields were "targets" of the investigation into White's escape, and that this in fact presented "an actual conflict" of a "grave nature." Brumfield informed the court, in White's presence, that he had "explained to him [White] the difficulty that is presented to us in defending him" in light of the conflict. White answered affirma-

1970—drug violation; and (5) June 1970—bribery.

**10.** 18 U.S.C. § 3575(e)(1) provides:

A defendant is a special offender for purposes of this section if . . . the defendant has previously been convicted in courts of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, or one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year under applicable laws of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency or instrumentality thereof.

**11.** 18 U.S.C. § 3575(f) provides:

A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant.

tively when asked by the court, "[D]o you understand the nature of the conflict," and was given the opportunity to ask questions. While it *may* be that White did *not* understand how he could be harmed by the Brumfields' conflict-burdened representation of him, there is nothing in the record which tends to establish such a lack of understanding. In light of the record and the substantial efforts made by the trial court (and the government) to protect White and comply with *Garcia* in this regard, I would not hold as a matter of law that White's waiver was not knowingly made. I would, rather, remit White to his post-conviction remedies.* If pursuant thereto White establishes, by testimony under oath and subject to cross-examination and possible rebuttal, that he was unaware of one or more of the precise, concrete ways in which he was subject to material harm by virtue of the Brumfields' conflict-burdened representation of him, and would not have continued with the Brumfields had he been adequately informed in that regard, then White's conviction should be set aside. But on this record we should not simply assume, as a matter of law, that such is the case. I therefore respectfully dissent from the present reversal of White's conviction.**

---

* Or, alternatively, remand to the trial court for an evidentiary hearing on this question.

** While the district court doubtless had discretion to disqualify the Brumfields despite a proper waiver by White, *United States v. Salinas,* 618 F.2d 1092 (5th Cir.1980), this does not mean that *White* could not waive the conflict. *Garcia,* 517 F.2d at 276–77. In my opinion this record falls short of establishing an abuse of discretion of which *White* is in a position to complain, absent a showing that his affirmative, voluntary, and apparently knowing request to be permitted to continue with his retained counsel, after being informed of the conflict, was not in fact knowingly made. *Cf. Delesdernier v. Porterie,* 666 F.2d 116, 121–23 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982) (disqualification of judge).