UNITED STATES of America,
Plaintiff–Appellee,

v.

Santiago CASIANO, Jr.,
Defendant–Appellant.

No. 90–2168.

United States Court of Appeals,
Fifth Circuit.

April 26, 1991.

---

Santiago Casiano, Jr., Bastrop, Tex., pro se.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Santiago Casiano, Jr. is a federal prisoner who was convicted in 1979 of conspiracy and of marijuana possession with intent to distribute. He now appeals the district court's denial of his 28 U.S.C. § 2255 motion, arguing that he has been placed in double jeopardy and that his trial counsel labored under a conflict of interest. In rejecting the motion, the district court found Casiano's double jeopardy claim meritless and his right to conflict-free counsel waived. We agree and therefore affirm.

I

From June 1976 to February 1977, approximately thirty persons living in or near Donna, Texas, imported marijuana from Mexico with plans to distribute it throughout the United States. Casiano was one of several men indicted for playing a role in this illegal importation and distribution scheme.

Before and during his trial, Casiano was represented by two attorneys, Aron Pena and Alfonso Ibanez. Four co-defendants were tried alongside Casiano: Two of these co-defendants (named Alvarado and Ocanas) were also represented by Pena and Ibanez; the remaining two defendants (Garza and De la Garza) were jointly represented by a third attorney, Roberto Salinas. Upon learning of these arrangements, the government filed a pretrial motion to disqualify on the basis that the defendants' attorneys were burdened by a conflict of interest. It appears that the government's motion was prompted by two potential conflicts: (1) Pena, Ibanez, and Salinas's representation of multiple co-defendants; and (2) Pena's prior representation of Ramon Martinez, an erstwhile participant in the Donna, Texas drug smuggling ring who was slated to testify against Casiano and his co-defendants.

The district court ruled on this motion during a pretrial hearing, excerpts of which follow:

THE COURT: All right, let's proceed with this motion. I believe, Mr. Salinas, you are probably right, and after reading these cases, as I interpret them, these conflicting situations can arise just about any time you are representing more than one defendant in the case.

MR. SALINAS: Yes, they can. I don't have a copy of this motion. As a matter of fact, I was not aware of it until just this morning.

THE COURT: Well, I think what provoked it, as I read the motion, is that apparently Mr. Pena, or someone in his office, advised the Government that Ramon Dionicio Martinez was planning to take the Fifth Amendment.

So I can see why this agitated the Government, counsel, because you do get into a conflict problem or potential conflict problem which, I think, is inherent

when you have more than one Defendant in the case. I think it goes beyond, after reading these cases—I don't know what the Defense lawyer is going to do, but I think it is really questionable in my mind, unless the Defendants waive their Sixth Amendment rights, that the matter is so fraught with dangers of conflict at all steps of the proceeding, that I don't see how you can ever represent more than one Defendant in the case.

\* \* \* \* \* \*

If you have Defendants A and B, let's say, in a case, and the issue comes up right at the beginning whether or not he is going to enter a plea, you are going to have to think not only how does it affect A but how does it affect B. Is it good for B for A to plead guilty? Or in testifying, how are you going to decide if a Defendant testifies whether it is contrary to his interest to testify, but it would be helpful to Defendant B for Defendant A to testify? How are you going to resolve that problem?

MR. SALINAS: It is a problem and has been a problem for a while.

THE COURT: It is not going to be a problem any more because I will tell you what is going to happen, and I hate to do it to you, but as near as I can tell, hereafter, unless the Defendant waives his Sixth Amendment rights knowingly and intelligently before the Magistrate, everybody is going to have to represent one man in one case, unless the Defendants expressly and affirmatively make known to the Magistrate they are knowledgeably waiving their Sixth Amendment rights....

MR. PENA: That's the situation we have with my clients. They have at the time they have appeared before the Magistrate expressed to Judge Mallet they wanted me and my firm to represent them and they each signed a waiver of any conflicts in the case.

... I have for each of my clients, Mr. Ibanez and I, have a waiver of any conflict with Mr. Ramon Martinez, who may be a witness here.

THE COURT: How about conflicts among the Defendants?

MR. PENA: If there are any, Your Honor, which we don't believe there are, but if there are, they have waived any possible conflict between themselves, knowing full well that we represent three of them.

THE COURT: How about as to the other two Defendants?

MR. PENA: I have one for each of them, Your Honor.

THE COURT: Well, I am still going to have a hearing on it, but I would ask that you please file these with the Clerk and incorporate them into the record.

\* \* \* \* \* \*

All right, let's call the Defendants: Ramiro Gonzalez, Santiago Casiano, Jr., Amadeo Uresti Garza and Rogelio Jose De La Garza and Natividad Ocanas.

\* \* \* \* \* \*

It has been called to my attention that the lawyers that are representing each of you in this case in the past—that these lawyers not only represent you, but represent other Defendants in this case and have represented other Defendants in the case.

Now, it may be that conflicts will arise between the interests of each of you and some other Defendant in the case that could affect the way in which the lawyers handle your case.

Now, there is no way I have of knowing every possible problem that could come up which might affect one of you adversely but which might help another of you.

For example, it might be advantageous to one of you to take the stand during the case, but by doing so you might hurt the chances of some other one of the Defendants.

For example—this is only an example—if Amadeo Uresti Garza is represented by Mr. Salinas, let's say it was advantageous for him to take the stand and give testimony in front of the jury, but when he did that he was going to hurt Rogelio Jose De La Garza, Mr. Sali-

nas would have to decide whether he was going to help Uresti Garza at the expense of Jose De La Garza. I am not saying Mr. Salinas would do this or that it would happen, but it might happen.

Now, also it might be advantageous, for example, for Ramiro Gonzalez Alvarado to enter a plea of guilty during the course of the trial. And maybe he would feel, whether true or not, that he might get some leniency from the Government or the Government might make some recommendation whereby he would get a lesser sentence. And if that happened, he might—that might include him giving testimony in the case, which would have an adverse effect, let's say, on Santiago Casiano, Jr., or Natividad Ocanas.

All of these things might come up during the trial. And then Mr. Pena would have to decide, "How do I want to advise Gonzalez Alvarado? Do I want to help him at the expense of hurting Ocanas and Casiano?"

Now, I am not saying these things will happen, but they can happen, and it might be that some of you would then— then your right of counsel would be impaired.

See, the Constitution of the United States gives each of you a right of a lawyer, and that means a lawyer of your choice, or a lawyer appointed by the Court.

Now, if for any reason there is a conflict between any of you Defendants or there might arise a conflict which could impair your right to a lawyer, and in view of that any of you wanted to change lawyers, then I would appoint a lawyer for you free of charge or I would give you time to hire another lawyer if you wanted that, because when the Constitution gives you a right to a lawyer, it gives you a right to a lawyer who is going to dedicate 100 percent of his energies to you and no one else. And when I say, "you," I mean each of you individually. Because that right to a lawyer means a right to a lawyer who is going to take care of you and not worry about what may happen to anybody else in the Courtroom, including yourself or me, as

long as he does this within the rules and within the law.

Now, do all of you understand what I have told you so far?

THE DEFENDANTS: Yes, sir.

\* \* \* \* \* \*

THE COURT: Now, I am going to ask each of you some individual questions concerning what I have just told you. And first, Mr. Ramiro Gonzalez Alvarado.

\* \* \* \* \* \*

THE COURT: I believe Mr. Pena told me earlier you signed a waiver of your Sixth Amendment rights, that is, your right to counsel.

DEFENDANT ALVARADO: Yes, sir, I did.

THE COURT: Do you understand it?

DEFENDANT ALVARADO: Yes, sir.

THE COURT: Do you still wish to waive any right you have under the Constitution to a lawyer in this case in view of what I have just explained to you? By waiving your right to a lawyer, you want to have Mr. Pena represent you even though there may be a problem come up that he doesn't know about and that you don't know about? Do you understand what I am getting at?

DEFENDANT ALVARADO: I am still willing to go along with him.

\* \* \* \* \* \*

THE COURT: Then you tell me what I was worried about when I was explaining all of these things to you. What was the problem I tried to get over to you that I wanted to be sure you understand? Can you explain it to me?

DEFENDANT ALVARADO: I will try, Your Honor. About taking the stand and Mr. Pena representing Mr. Casiano and Mr. Ocanas. I think I know what you are trying to explain to us, that if I have to take the stand, I might get either one of them in trouble because we got the same counselor.

THE COURT: Or if somebody else took the stand he might get you in trouble. And Mr. Pena would have to sit

there and try to figure out, "What do I do now?" Do you see? But knowing that, do you still want him to represent you?

DEFENDANT ALVARADO: Yes, sir, Your Honor.

THE COURT: In other words, you are willing to take the risk of what might happen because he represents other people in the case?

DEFENDANT ALVARADO: Yes, sir.

THE COURT: And you do it knowingly?

DEFENDANT ALVARADO: Knowingly, yes, sir.

THE COURT: There was one example I gave you. Some other things might happen during the trial that I don't even know about right now that may later come up during the trial. But knowing these things, you still want to go ahead and do it?

DEFENDANT ALVARADO: Yes, Your Honor.

\*    \*    \*    \*    \*    \*

THE COURT: How about Mr. Santiago Casiano, Jr.?

DEFENDANT CASIANO: Yes.

THE COURT: Mr. Casiano, you have heard what I just explained to Mr. Gonzalez Alvarado?

DEFENDANT CASIANO: Yes, sir.

THE COURT: Mr. Casiano, you have heard what I just explained to Mr. Gonzalez Alvarado?

DEFENDANT CASIANO: Yes, sir.

THE COURT: Is your answer the same?

DEFENDANT CASIANO: The same.

THE COURT: You want Mr. Pena, and his firm, to continue representing you in this case?

DEFENDANT CASIANO: Yes, sir.

THE COURT: And do you do that knowing that there might be problems that might come up that would affect—and probably will—that problems will come up that might affect his decision concerning strategy in the case, for example, what to do, whether or not to put one person on or whether or not to put another person on. Do you understand that?

DEFENDANT CASIANO: Yes, sir.

THE COURT: And knowing this you would rather have him represent you than have me appoint someone else or you hire someone else.

DEFENDANT CASIANO: I would rather have Mr. Aron Pena.

THE COURT: And with the problems involved?

DEFENDANT CASIANO: Yes, sir.

\*    \*    \*    \*    \*    \*

THE COURT: I find these Defendants have now been apprised of their Sixth Amendment rights to counsel, and that is their right to an unfettered, dedicated counsel with full loyalty to them, to each Defendant, and to each Defendant alone, and that they now recognize the potential conflicts and potential dangers and disadvantages which might occur during the course of the trial, in view the large number of Defendants, not only before the Court now, but also the large number of Defendants who have entered pleas in the case pending sentencing and as I understand it, even some Defendants who have already been sentenced.

So, having been made aware of all of these things. I will permit counsel to continue representing the Defendants that they are representing.

Does the Government have any additional admonitions you wish me to give these Defendants or any additional comments you wish made in this case?

MR. ODOM: Not to these Defendants. The Government would like for the record to reflect that the only Defendant who has already pled guilty and who expressed at one time a desire to plead the Fifth Amendment has been apprised by Mr. Pena that he no longer represents him, and as I understand it, no longer desires—or his understanding is that he will no longer plead the Fifth Amendment in that respect. That is Ramon Martinez, Your Honor.

THE COURT: Is that correct, Mr. Pena?

MR. PENA: That's correct, Your Honor. He told us he was being subpoenaed.

He has been serving time on this matter for almost two years now. He recognizes that our employment terminated, and we so advised him in the presence of the Government attorney last week, and he so recognized.

We told him he could testify if he wanted to or could not, under the Court's direction.

Casiano's drug importation efforts earned him consecutive five year sentences, four years special parole, and a $20,000 fine. The district court later vacated Casiano's special parole term, but his convictions were subsequently affirmed on direct appeal. *United States v. Ocanas*, 628 F.2d 353 (5th Cir.1980).

Thereafter, Casiano (acting *pro se* and *in forma pauperis*) filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255; it was dismissed with prejudice on November 18, 1982, upon Casiano's request. On September 27, 1989, Casiano filed the instant § 2255 motion challenging his convictions. This motion was referred to a magistrate who, without an evidentiary hearing, recommended that it be denied. After reviewing the record *de novo*, the district court adopted the magistrate's findings of fact and recommendation, denying the motion on February 2, 1990. This appeal followed.

## II

■ In reviewing the trial court's denial of Casiano's federal habeas corpus motion, we subject its findings of fact to "clearly erroneous" scrutiny. *Humphrey v. Lynaugh*, 861 F.2d 875, 876 (5th Cir.1988); *United States v. Hughes*, 635 F.2d 449 (5th Cir.1981). Errors of law, of course, we freely review. *Humphrey*, 861 F.2d at 876; *Baker v. Metcalfe*, 633 F.2d 1198, 1201 (5th Cir.), *cert. den.*, 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981). Further, because Casiano "has not deliberately bypassed the appellate process in order to gain tactical advantage," *United States v. Caceres*, 745 F.2d 935, 936 n. 2 (5th Cir. 1984), he may assert his Sixth Amendment

claim notwithstanding the fact that he failed to raise it in his direct appeal.

## III

Casiano's rejoinder to the denial of his § 2255 motion comprises two arguments: (1) his consecutive sentences for conspiracy and for the underlying offense of drug possession constitute double jeopardy; and (2) he was denied effective assistance of counsel. We disposed of Casiano's double jeopardy claim, however, on direct appeal some eleven years ago:

> Casiano also contends that by receiving consecutive sentences for conspiracy and possession he has somehow been punished twice for the same offense. It is beyond dispute, however, that conspiracy and the substantive offense that is the object of the conspiracy are separate and distinct crimes. The trial court could therefore properly impose consecutive sentences.

*Ocanas*, 628 F.2d at 362 (citations omitted). Accordingly, Casiano's only legitimate ground for § 2255 relief is his Sixth Amendment contention.

■ That contention is as follows. Casiano admits that he was aware of—and waived any—possible conflict of interest inherent in his attorneys' simultaneous representation of Alvarado and Ocanas, two of his four co-defendants. He asserts, however, that one of his attorneys—Pena—operated under the onus of a second, discrete conflict: his prior representation of Martinez, a government witness who testified against Casiano. In Casiano's words, the waiver he entered "did not go to the conflict raised by [the] inability to cross-examine a Government witness at the expense of another client but solely to conflicts arising from inability to call one co-defendant against another because they were represented by the same counsel." Put another way, Casiano insists that Pena's earlier attorney-client relationship with Martinez created an actual conflict in violation of the Sixth Amendment, and that he never waived his right to be free from this conflict, irrespective of whether he waived any

conflict vis-a-vis Pena and Ibanez's representation of Alvarado and Ocanas.

We disagree. In the first place, it is far from clear that Pena's previous dealings with Martinez served to impinge upon Casiano's Sixth Amendment protections. Admittedly, Pena himself could not have put on a constitutionally adequate defense; we have previously held that an attorney operates under an "actual conflict" when he represents a criminal defendant after having previously represented a government witness in a related matter. *United States v. Martinez*, 630 F.2d 361 (5th Cir.1980). However, nothing whatsoever in the record bespeaks of Ibanez operating under a similar constraint. It may well be true, then, that Ibanez satisfied Casiano's right to a conflict-free attorney, Pena's prior representation of Martinez notwithstanding. A number of courts in other circuits have taken just such a tack, relying on the presence of untainted co-counsel to reject a defendant's conflict of interest claim. *See United States v. Partin*, 601 F.2d 1000 (9th Cir.1979), *cert. den.* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980); *United States v. Hearst*, 466 F.Supp. 1068 (N.D.Cal.1978); *Fuller v. Israel*, 421 F.Supp. 582 (E.D.Ill. 1976). We opt not to ground our holding on this basis, given that the record is silent as to Ibanez's and Pena's respective roles in Casiano's defense, particularly as concerns Martinez's cross-examination. Still, the fact that only Pena "place[d] himself in a situation 'inherently conducive to divided loyalties,'" *Zuck v. State of Alabama*, 588 F.2d 436, 439 (5th Cir.1979), *citing Castillo v. Estelle*, 504 F.2d 1243 (5th Cir.1974) leaves us understandably skeptical as to whether Casiano has shown at day's end an "actual, not merely [a] hypothetical or speculative conflict...." *United States v. Alvarez*, 580 F.2d 1251, 1255 (5th Cir.1978).

In the wake of our decision to assume *arguendo* an "actual" conflict, we hinge our judgment of dismissal upon the fact that Casiano validly waived his right to be free from such a conflict. In *United States v. Garcia*, 517 F.2d 272 (5th Cir.

1975), this circuit took up for the first time the question of whether and how a defendant could waive a counsel's conflict of interest. We held *inter alia* that the right to unburdened representation, like other constitutional guarantees, may be foregone "so long as the waiver is voluntary, knowing and intelligent." *Garcia*, 517 F.2d at 277.[1] To ensure that every effective waiver satisfies these prerequisites, we instructed district courts "to actively participate in the waiver decision" and, more particularly, "to follow a procedure akin to that promulgated in F.R.Crim.P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record":

> [Under this procedure] the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation, Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Id.* at 278.

In subsequent cases, we have managed to restate the *Garcia* strictures much more pithily: To meet the requirement of a "knowing and intelligent" waiver, "the state must show that the defendant (1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel." *Zuck*, 588 F.2d at 440.

---

1. The Supreme Court has indicated, however, that a defendant does not enjoy an unqualified right to forego this Sixth Amendment privilege.

*See Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

After thoroughly reviewing the transcript of the district court's hearing on the government's motion to disqualify, we hold that Casiano waived—"knowingly and intelligently"—his Sixth Amendment right to conflict-free representation insofar as Pena's prior representation of Martinez was concerned. The transcript leaves no doubt that Casiano entered a waiver covering not only the concurrent-representation-of-co-defendants conflict but also the conflict stemming from Pena's earlier work for Martinez. It also reveals beyond question that Casiano was aware of his right to counsel unfettered by conflict; hence *Garcia*'s third prong poses no problem. Likewise prong one: On several occasions during the hearing, mention was made of Pena's relationship with Martinez, the prospect that Martinez might testify, and the potential for Pena to be torn between divergent obligations.

In fact, the only remotely close question concerns the second of *Garcia*'s three requirements: whether Casiano was sufficiently apprised of the potential pitfalls posed by Pena's earlier affiliation with Martinez. On this point *United States v. White*, 706 F.2d 506 (5th Cir.1983) is instructive. White was convicted of escaping from the custody of a federal marshal; at trial, he was represented by two attorneys who were suspected of having aided in his escape. Recognizing the conflict, the government filed a motion to disqualify White's attorneys, which owing to White's waiver was subsequently denied. Before accepting the waiver, the district court asked White whether he was aware of the conflict and whether he knew of his right to conflict-free counsel; however, it never broached the subject of how White "might be prejudiced by [his attorneys'] representation." *White*, 706 F.2d at 509. On direct appeal, this court reversed White's conviction on the ground that his waiver did not meet *Garcia*'s second standard. *Id.* at 508. In so holding, the *White* court emphasized that although it did not "expect a trial judge to anticipate every possible detriment that might befall a defendant as the result of a conflict in a particular case, we do require at least *some affirmative effort*

by the trial court to inform the defendant of the ways the conflict might operate to impact deleteriously upon the reasoned and competent presentation of his or her defense." *Id.* at 509 (emphasis added).

Here, we believe the district court undertook the "affirmative effort" requisite under *White* and thus fulfilled the dictates of *Garcia*. At the pretrial hearing, it informed Casiano and his co-defendants that "these lawyers not only represent you, but represent other Defendants in this case and have represented other Defendants in the case"; that "conflicts will arise ... that could affect the way in which the lawyers handle your case"; that "there is no way I have of knowing every possible problem that could come up ..."; that with Pena as counsel "there may be a problem come up that he doesn't know about and that you don't know about"; and that "there might be problems that might come up that would affect—and probably will—that problems will come up that might affect [Pena's] decision concerning trial strategy in this case...." Concededly, the trial court did not detail each and every one of the snares posed by Pena's prior efforts on Martinez's behalf. More importantly, however, it need not have, as *White* makes clear. *Id.* at 509. Because the district court's colloquy with Casiano and the other four defendants was a legitimate effort "to inform the defendant of the ways the conflict might operate upon the reasoned and competent presentation of his or her defense," *id.*, we hold that the district court satisfied the requirements of *Garcia* and *White*, thus rendering Casiano's waiver effective as to each conflict.

Moreover, we note by way of conclusion that the trial court's "affirmative attempt" specifically allowed Casiano to make an informed waiver of the conflict presented by Martinez as a witness. The record plainly indicates that Casiano knew Martinez would possibly testify against him, that he knew Pena had earlier represented Martinez, that he knew Pena might be caught between obligations to him and previous clients, that he knew these divided loyalties might affect the way Pena would

handle his case, and that he knew such trial decisions could adversely affect his defense. This information is explicit in the transcript of the proceeding and it is clearly sufficient for Casiano to have made an informed waiver of the conflict arising from Pena's previous representation of Martinez. Equally obvious from the record is Casiano's unswaying determination to cast his lot with Pena, conflict of interest or no. In sum, we can conclude only that Casiano's petition was properly and adeptly disposed of by the court below.

## IV

For the forgoing reasons, the judgment of the district court denying Casiano's request for § 2255 relief is

AFFIRMED.