UNITED STATES of America

v.

James PHILLIPS.

Criminal No. H–95–265–SS.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 25, 1996.

Pretrial Services, Houston, TX, U.S. Probation, Houston, TX, U.S. Marshal, Houston, TX, Kenneth Dies, U.S. Attorneys Office, Houston, TX, for U.S.A.

Philip Herbert Azar, II, Houston, TX, for Wendell Alboyd Cornett.

Marc C. Carter, Houston, TX, for Warren Dean Cornett.

Roy Wallace Smith, Houston, TX, for Kim Benita Boutte.

Samuel Dorsey Adamo, Adamo & Cornelius, Houston, TX, for Kevin Renard Nixon.

Cornel A. Williams, Houston, TX, for Kelvin Nmi Turner.

Michael Wayne Sandel, Houston, TX, for Henry Charles Derouselle.

Cay M. Hughes, Houston, TX, for Mary Martilliea Galloway.

Timothy Johnson, Houston, TX, for Linda Knox Cornett.

Ramond W. Howard, Missouri City, TX, for Toni Lamont Scott.

Gerald Fry, Houston, TX, for Romalius Eugene Mathews.

Dick DeGuerin, DeGuerin and Dickson, Houston, TX, for James Manuel Phillips.

### ORDER

ATLAS, District Judge.

The Court has considered the United States of America's ("the Government") Motion to Disqualify Counsel for James Manuel Phillips, Jr. ("Phillips"), who is represented principally by Paul Nugent, with the occasional assistance of David Gerger and Mike DeGeurin, all of Foreman, DeGeurin & Nugent ("FD & N"). Defendant Phillips strenuously opposes this relief.

### BACKGROUND FACTS

The Government objects to Nugent's continued representation of Phillips on the ground that DeGeurin has for several years represented Mona Smith–Watson ("Watson") in her defense during and in connection with a six-month criminal trial in *United States v. Samuel Pasados–Rios*, Cr. H–92–137 (S.D.Tex.). Watson still is represented by DeGeurin in her case, which is on appeal to the Fifth Circuit. The Government argues that Nugent, as a member of FD & N, should be disqualified from representation of Phillips under the Texas Disciplinary Rules of Professional Conduct, adopted by the State Bar of Texas in 1990, Rules 1.05, 1.06, 1.09(a)(3) and 1.09(a)(2).

Phillips argues that the purported conflict of interest is more "apparent" than real, and that DeGeurin's current representation of Watson does not in any factual way involve Phillips. They argue that Nugent's representation of Phillips does not conflict with DeGeurin's representation of Watson since her anticipated testimony against Phillips will be minimal, cumulative of other witnesses and not inconsistent with his position in this case.[1] Finally, Phillips relies heavily on his Sixth Amendment right to counsel of his choice in his criminal trial.

The Court held a hearing on the Government's Motion on October 31, 1996, pursuant to *United States v. Garcia,* 517 F.2d 272, 277 (5th Cir.1975), to inquire into the volunteering of Phillips' (and Watson's) waiver of any conflicts of interest.[2] The Court questioned Phillips on the record at that time. Phillips stated that he understood the potential conflict and nevertheless wanted Nugent to represent him. It was explained that Nugent has known Phillips' mother for many years and that Phillips' family has great trust in Nugent personally.

The Court also took testimony from Ms. Watson about her past and current relationship with DeGeurin (and the other attorneys at FD & N), her proposed testimony involving Phillips in the upcoming criminal trial in the instant case, and her concerns about DeGeurin or members of FD & N serving as counsel for a Defendant in this case in which she anticipates being called by the Government as a witness. Watson was convicted for violating the narcotics laws because she participated in a drug conspiracy that involved people who, at a minimum, associated and socialized with some of Defendants in the case at bar. DeGeurin represented Watson at trial and is counsel for her appeal. Both her case and Phillips' involve alleged narcotics laws violations. After her conviction, Watson agreed to testify at the Government's request and she agreed to respond to all questions truthfully.[3] She understands that the Government has agreed that if she is truthful, then the Government will request a reduction in her 290 month sentence.

Watson stated that she met Nugent on more than one occasion at the offices of FD & N during meetings she had with DeGeurin. She perceives Nugent assisted DeGeurin in the preparation for her criminal trial, but she cannot recall any specifics. Her perception is in direct contradiction to statements made by Nugent at the hearing. Watson testified that during DeGeurin's representation of her she did not mention Phillips' name or discuss Phillips in any way.[4] Thus, it is likely that Watson's testimony about Phillips will be narrow and well-defined.

Watson has declined unequivocally to waive any conflict as to FD & N representing Phillips. Watson worries that she will be at an unfair disadvantage during cross examination by FD & N counsel when they are acting on behalf of Phillips. She also expressed the fear that her testimony, if adverse to Phillips, could undermine her relationship with her lawyer, DeGeurin. In sum, Watson expressed concerns that her interests will be impaired by the divided loyalties

1. Phillips has submitted in camera a sealed affidavit and limited other material, which has been made part of the record. The Court has reviewed these materials, but will not refer to their contents explicitly insofar as they may contain information other than that disclosed by defense counsel in open court.

2. The Court's role at the hearing was "to ensure that the defendant (1) is aware of the conflict of interest, (2) knows the potential consequences of continued representation under such conflict, and (3) understands that he has a right to counsel unfettered by the conflict of interest." *United States v. Plewniak,* 947 F.2d 1284, 1287 (5th Cir.1991), *cert. denied,* 502 U.S. 1120, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992).

3. DeGeurin also attended one or two meetings with Watson and a Government attorney when she worked out her post-judgment cooperation agreement, although his role was ambiguous and the Government does not contend his involvement in this respect is material. There is no evidence that factual matters were discussed by Watson with Government personnel in DeGeurin's presence.

4. Watson did not even recognize Phillips by his real name. She was able to comment on him, although only by referring to him by his nickname.

of the FD & N attorneys.[5] Ms. Watson thus strongly objects to DeGeurin or anyone from FD & N serving as counsel for a defendant in the upcoming trial if she is to be a witness.

## DISCUSSION

Phillips primarily argues that under the Sixth Amendment to the United States Constitution he has a right to the counsel of his own choosing, citing *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) and various other cases. There is "a presumption in favor of allowing the defendant to waive [a] conflict and keep his counsel of choice." *United States v. Plewniak*, 947 F.2d 1284, 1289 (5th Cir.1991), *cert. denied*, 502 U.S. 1120, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). Phillips argues that disqualification should be an act of "last resort," with the Government bearing a "heavy burden" to show "overriding" social or ethical interests and a "specific" conflict, citing *In re Grand Jury Proceedings (John Doe)*, 859 F.2d 1021, 1026 (1st Cir.1988).[6]

The Court agrees and is reluctant to deprive a party of his counsel of choice, particularly in a criminal case. *See Wheat v. United States*, 486 U.S. 153, 158–59, 108 S.Ct. 1692, 1696–97, 100 L.Ed.2d 140 (1988). In *Wheat*, a case in which an attorney sought to represent more than one co-defendant in a single criminal conspiracy, where it appeared that only one defendant was going to trial, the United States Supreme Court held that district courts "must recognize the presumption in favor of [a criminal defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1700. Thus, Phillips' argument that the Sixth Amendment mandates that he should prevail is unavailing when there are significant reasons for a contrary result.[7] *See United States v. Sotelo*, 97 F.3d 782, 791 (5th Cir.1996), cert. pet. filed (No. 96–6656) (11/12/96).

Significant reasons exist in this case to grant the Government's motion and to deny Phillips' request to retain Nugent as his counsel for trial in this case. Since Watson still is a client of DeGeurin and FD & N, Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct ("Rules"), codified as State Bar Rules (Texas Disciplinary Rules of Professional Conduct), Tex.Gov't Code, Title 2, Subtitle G—Appendix, Art. 10, § 9, following § 83.006 (Vernon Supp.1997), is the primary guide.[8] Rule 1.06 provides:

**5.** The Court also, at the suggestion of DeGeurin and with the agreement of the Government, met with Ms. Watson out of the presence of all counsel. Ms. Watson explained herself further in some detail. She re-emphasized the points made during her testimony in open court.

**6.** Motions to disqualify are "substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992).

**7.** The Supreme Court held in *Wheat* that, not only do defendants under the Sixth Amendment have the right to the assistance of counsel in a trial for any serous crime, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), but also:

We have further recognized that the purpose of providing assistance of counsel "is simply to ensure that criminal defendants receive a fair trial," and that in evaluating Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." Thus, while

the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, *the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.* The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects. Regardless of· his persuasive powers, an advocate who is not a member of the bar may not ·represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. *Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government.*
*Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (citations omitted, emphasis added).

**8.** The ABA Model Rules of Professional Conduct ("ABA Rules") are also applicable. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262,

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) *In other situations* and except to the extent permitted by paragraph (c), *a lawyer shall not represent a person if the representation of that person:*

(1) involves a *substantially related matter* in which that person's *interests are materially and directly adverse to the interests of another client* of the lawyer or *the lawyer's firm;* or

(2) *reasonably appears to be or [to] become adversely limited by the lawyer's or law firm's responsibilities to another client* or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer *may* represent a client in the circumstances described in (b) *if:*

(1) the lawyer reasonably believes the representation of each client will not be materially affected; *and*

(2) *each* affected or *potentially affected client consents to such representation* after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

The Drafters' Comments to the Texas Disciplinary Rules are clear that "[l]oyalty is an essential element in the lawyer's relationship to a client" and when an "impermissible conflict of interest ... exist[s] before the representation is undertaken, ... the representation should be declined." Rule 1.06, Comment 1. *See id.,* Comment 3. *In re American Airlines, Inc.,* 972 F.2d at 614–19.[9] Once the matters in which the dual representation are found to be "substantially related," an irrebuttable presumption arises that relevant confidential information was disclosed.... *American Airlines,* 972 F.2d at 614.

There is no question that the criminal case in which DeGeurin and FD & N represent Watson is "substantially related" to the matters involved in the pending indictment. The Government intends to call Watson as a witness at Phillips' trial because of her purported knowledge relating both to Phillips' and other Defendants' involvement in an alleged drug trafficking conspiracy.

In addition, the Court finds on the basis of the evidence at the disqualification hearing, that Watson's interests are "materially and

---

122 L.Ed.2d 659 (1993). However, the parties have not argued the ABA Rules in any respect. Texas Disciplinary Rule 1.06 is substantially the same as ABA Rule 1.7 which provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

This Rule requires the same outcome reached by the Court. Therefore, the Court will analyze the issues with reference to the Texas Disciplinary Rules.

**9.** *American Airlines* discusses the presumption arising from the existence of a substantial relationship when a former client's matter is involved, and specifically discusses Rule 1.09, which governs representation adverse to the interests of former clients. Rule 1.09 provides in material part that:

(a) Without prior consent, a lawyer who personally has *formerly* represented a client in a matter shall *not thereafter represent another person in a matter adverse to the former client:*
(2) if the representation in reasonable probability will involve a violation of Rule 1.05 [rule on keeping client's confidences];
(3) [or] if it is the same or a *substantially related matter.*
(b) Except to the extent authorized by Rule 1.10 [which is inapplicable], when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

Since the potential harm arising from divided loyalties is greater when the first client remains a client of the lawyer who is the object of the disqualification motion, as is present in the case at bar, the rationale in *American Airlines* for disqualification applies with even more force.

directly adverse" to Phillips' interests. *See* Rule 1.06(b)(1). Watson has agreed to testify as a Government witness and to describe potentially incriminating circumstances in which she saw Phillips and other Defendants named in the indictment in this case. Specifically, Watson testified that she saw Phillips, a police officer, both in and out of uniform at at least several private parties and at certain clubs where some of Defendants in this case also were present.

The adversity between Watson and Phillips arises because of Phillips' counsel's potential need to cross-examine Watson *and* to argue Watson's testimony lacks credibility. Watson's fear is that Nugent or FD & N may make it appear that she is lying when she has promised the Government that she will tell only the truth in her testimony. She hopes the Government will advocate for a reduction of her sentence if the United States Attorney's Office on this case believe she has been totally forthright. If the United States Attorney's Office believe that she has lied, then the Government will not advocate on her behalf to her sentencing judge.

In any event, even viewed in the light most favorable to Phillips, this case involves a type of "potentially adverse" circumstance envisioned by Rule 1.06(b)(2).[10] There is a "reasonable appearance of unduly diminished representations" in this case as to both Watson and Phillips, and for this reason also FD & N's dual representation is not appropriate. *See Conoco Inc. v. Baskin*, 803 S.W.2d 416, 421 (Tex.App.—El Paso 1991). While it is *unlikely* (although not impossible) that Nugent will use any privileged factual information obtained by DeGeurin or FD & N in cross-examination of Watson, if he cross-examines at all (*cf.* Rule 1.05; *Id.* Rule 1.09 and Comments 4A and 8 thereto), it is very possible that Nugent, as a member of FD & N (and who may have tangentially worked on Watson's defense), acquired knowledge of

Watson's personality and other traits that could provide him with an intangible or undefinable advantage in cross-examining her.[11] Alternatively, Nugent's knowledge of Watson could cause him, consciously or unconsciously, to hesitate to examine her on topics or in ways that would be most advantageous to Phillips. Thus, the Court concludes there is a serious potential conflict, which the Court deems sufficient to warrant disqualification. *See United States v. Sotelo*, 97 F.3d 782, 791 (5th Cir.1996), cert. pet. filed, No. 96–6656 (11/12/96).

The Court finds also as to Rule 1.06(b)(2), that in a complex criminal case such as this, it is difficult if not impossible for defense counsel to anticipate on behalf of a defendant awaiting trial all the possible areas of cross-examination that may arise for any given witness; it thus is impossible to assess accurately and fully the degree of adversity that lawyer's client will have with one or more particular Government witnesses. *See Wheat v. United States*, 486 U.S. at 162–63, 108 S.Ct. at 1698–99; *see* Rule 1.06, Comment 3. While the Court has no reason to doubt the sincerity of Nugent and DeGeurin when they argue that no material factual conflicts exist in this case, even the best and most conscientious counsel cannot always anticipate the twists and turns of a criminal trial. The Court cannot ignore, moreover, the subconscious divided loyalty of the firm, which conceivably could deprive Phillips of the unfettered advice of his counsel, as well as possibly his Sixth Amendment right to effective assistance of counsel. *United States v. Martinez*, 630 F.2d 361, 363 (5th Cir.1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *Zuck v. Alabama*, 588 F.2d 436, 439–41 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62

---

**10.** In Comment 3 to Rule 1.06, the Rules' Drafters state: "Simultaneous representation of parties whose interests in litigation are not actually directly adverse but where the potential for conflict exists, such as co-plaintiffs or co-defendants, is governed by Paragraph (b)." Here, the potential for conflict is at least as great as most cases involving co-defendants or co-plaintiffs, since Watson is cooperating with the Government and

has agreed to testify to potentially incriminating conduct involving Defendant Phillips.

**11.** DeGeurin represented Watson in a six-month trial. It is inconceivable that DeGeurin and others would not get to know Watson well during such an extended and intense time.

L.Ed.2d 42 (1979); *Tucker v. United States,* 235 F.2d 238, 240 (9th Cir.1956).[12]

Finally, since Rule 1.06(b) applies, Rule 1.06(c) requires consent from *both* of the firm's clients' in these circumstances before the firm may continue to represent both clients. *See* Rule 1.06(c)(2). Since Watson clearly and unequivocally has declined to consent to joint representation, the Court's inquiry ends here.[13]

This result is supported by the spirit of the Rules as well. The State Bar Rules' Drafters commented:

Ordinarily, it is *not advisable* for a lawyer to act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated and even if paragraphs (a), (b), and (d) are not applicable. However, there are circumstances in which a lawyer may act as advocate against a client, for a lawyer is free to do so unless this Rule or another rule of the Texas Disciplinary Rules of Professional Conduct would be violated. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in a matter unrelated to any matter being handled for the enterprise if the representation of one client is not directly adverse to the representation of the

other client. *The propriety of concurrent representation can depend on the nature of the litigation.*

Rule 1.06, Comment 11. It is this Court's assessment after observing the testimony and demeanor of the two clients involved in this case that neither is particularly sophisticated. Unlike the example quoted above of two affiliated corporations, the clients here are individuals. The original client, Watson, has refused to consent to FD & N's dual representation based in part on the "appearance," at least to her, of a serious conflict and breach of loyalty by her lawyer, if he was also to represent Phillips.[14]

Nugent has offered and Phillips has agreed to use a different attorney to cross-examine Watson at Phillips' trial. While this suggestion has superficial appeal, the Court concludes that it is insufficient to overcome the lack of consent by Watson, and therefore this proposal does not change the Court's conclusion. The authorities cited by Phillips do not provide the Court with the requisite authority in any event. One cited case involved civil matters not analogous to the case at bar. *In re Braniff,* 1992 WL 261641 (Bkrtcy.M.D.Fla.1992). In the other case, *United States v. Rahman,* 837 F.Supp. 64, 71 (S.D.N.Y.1993), the Government was the party suggesting standby counsel for certain

---

**12.** Phillips relies on *United States v. Casiano,* 929 F.2d 1046, 1053 (5th Cir.1991). *Casiano* is unpersuasive authority. *Casiano* (a petitioner seeking a writ of habeas corpus on the basis of ineffective assistance of counsel at his criminal trial), had two attorneys throughout his trial and unequivocally had waived any conflict in order to permit his attorneys to represent co-defendants at the same trial and to continue to permit one of his attorneys to represent him despite that attorney's previous representation of a Government witness, Martinez. In *Casiano,* there was no indication of any objection by Martinez or the co-defendants' to the attorney's representation of Casiano. Furthermore, unlike in the case at bar, the earlier representation of Martinez did not continue through the time of Casiano's trial. 929 F.2d at 1052 ("In the first place, it is far from clear that Pena's [the attorney's] *previous dealings* with Martinez served to impinge upon Casiano's Sixth Amendment protections"). Moreover, the Court of Appeals in *Casiano* made its views clear when it reiterated its earlier holding from *United States v. Martinez,* 630 F.2d 361 (5th Cir.1980), stating "we have previously held that an attorney operates under an 'actual conflict' when he represents a criminal defendant

after having previously represented a government witness in a related matter." *Casiano,* 929 F.2d at 1052. In any case, unlike in *Casiano,* Phillips has several months to obtain new counsel and the actual prejudice to him will be minimal.

**13.** Additionally, is far from clear to this Court that Phillips, a veteran police officer, has a meaningful idea of the intensity of a criminal trial when he is a party, as opposed to a witness, the typical role for police officers.

**14.** It is also noted that the Texas Courts have interpreted Rule 1.06(b)(2) to require disqualification when "the multiple representation gives rise to even 'a reasonable appearance' that the representation of one client will be adversely limited by the representation responsibilities to the other." *Conoco Inc. v. Baskin,* 803 S.W.2d 416, 421 (Tex.App.—El Paso 1991). *See American Airlines,* 972 F.2d at 617–18; *Dresser Indus.,* 972 F.2d at 545. *See also United States v. Coleman,* 997 F.2d 1101, 1104 (5th Cir.1993), *cert. denied,* 510 U.S. 1062, 114 S.Ct. 735, 126 L.Ed.2d 698 (1994).

cross-examination purposes, and the former clients did not object to the dual representation. Thus, the *Rahman* circumstances differ materially from those before this Court.

In sum, the Court holds that Phillips does not have the absolute and unqualified right to Nugent as his counsel in this case. *See Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The Court concludes that it must disqualify Nugent and FD & N from representation of Phillips in this case. Since there appears to be ample time for substitution of qualified and desirable counsel to prepare fully for trial in this case, the trial date will not be adjusted at this time. It is therefore

**ORDERED** that the **Government's Motion to Disqualify Counsel** [Doc. # 160] is **GRANTED.** Defendant Phillips must obtain new counsel promptly and shall notify the Court by letter as to whether another pretrial conference is necessary. It is further

**ORDERED** that Phillips' new counsel may file new motions on Phillips' behalf within 14 days of his or her entry of appearance in this case, but no later than **December 6, 1996.** The Court will address all such motions, if any, at the currently scheduled hearing set for December 18, 1996, if there is no request for a separate pretrial conference.