CONOCO INC., Relator,

v.

The Hon. Pat M. BASKIN, Judge,
142nd Judicial District Court of
Midland County, Texas, Respondent.

No. 08–90–00361–CV.

Court of Appeals of Texas,
El Paso.

Jan. 9, 1991.

Patrick S. Gerald, John A. 'Jad' Davis, Kemp, Smith, Duncan & Hammond, Midland, for relator.

Deborah Essig Taylor, James V. Hammett, Jr., Scott, Douglass & Luton, Houston, Milton L. Bankston, Bankston, Wright & Greenhill, David L. Orr, Douglas Dodds, McGinnis, Lochridge & Kilgore, Jeff Armstrong, Johnson & Gibbs, Austin, and James L. Gallagher, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, for respondent.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In an original proceeding in which Relator seeks a writ of mandamus requiring the Respondent trial judge to set aside his order denying Relator's motion to disqualify counsel, we deny the relief.

*Procedural and Factual Background*

Relator seeks mandamus relief from a September 28, 1990 order of the Respon-

**418**

dent denying Relator's Motion to Disqualify Counsel. The trial court reaffirmed the initial denial by subsequent written order on November 8, 1990. Relator sought to disqualify the law firm of Scott, Douglass & Luton ("SD & L") from continuing to represent Discovery Operating, Inc. in the suit styled *Discovery Operating, Inc. v. Farmland Industries, Inc. and Enerfin Gas Processing Corp., and Conoco Inc.*, No. A–37,648, pending on the docket of Respondent's court. The motion was based upon allegations of conflict of interest arising from SD & L's present representation of Conoco in other litigation and from past representation of Conoco by James Hammett and Deborah Taylor, formerly associated with the Butler & Binion law firm and presently employed by SD & L, and as being violative of Rules 1.09 and 1.05 of the Texas Disciplinary Rules of Professional Conduct, Tex. Gov't Code Ann. art. 10, § 9 (Vernon Supp.1991). For a better understanding of the background and facts, a summary of the relevant chronology of events is as follows:

1981     Hammett begins representation of Discovery Operating;

1987     Hammett and Taylor, while at Butler & Binion, are retained by Conoco to evaluate viability of take-or-pay suit against UTTCO (United Texas Transmission Company);

February, 1988     Hammett and Taylor file UTTCO suit on behalf of Conoco;

August–September 1988     Hammett and Taylor make two court appearances, establishing favorable venue for Conoco;

December 1988     Conoco settles and dismisses the suit against UTTCO without further involvement by Hammett and Taylor;

August 1, 1989     Effective date of Conoco purchase of Enerfin assets although sale did not actually take place until after August 11 and did not close until several months later;

August 11, 1989     Hammett and Taylor (still with Butler & Binion) file suit for Discovery Operating against Farmland and Enerfin;

September 28, 1989     Approximate date Conoco sends first letter notice to Discovery regarding purchase of Enerfin; Hammett first learns of Conoco involvement;

October 1, 1989     Approximate date of telephone call by Hammett to Rudge, Conoco's general counsel, concerning Conoco's views of suit given Hammett's past representation of Conoco;

December 14, 1989     Upon Conoco's "indefinite suspension" of gas sales to Northern Natural Gas, affecting price under contract to Discovery, Hammett files First Amended Petition joining Conoco as party defendant;

April 13, 1990     Hammett and Taylor join SD & L at time SD & L is representing Conoco in six other suits (*Benavides, Blair Oil, Hess, Hunt, Schnell,* and *City of McAllen*);

April 30, 1990     Hammett and Taylor file Second Amended Petition alleging fraudulent inducement by Farmland, seeking punitive damages;

May 1, 1990     Hammett and Taylor file notice of change in counsel status to SD & L instead of Butler & Binion;

May 2, 1990     Third Amended Petition filed;

?, 1990     Hammett telephones Rudge and again mentions conflict question now involving current representation of Conoco by SD & L; again no protest by Rudge;

June 26, 1990     Discussion between Hammett and Jad Davis of Kemp, Smith firm (defending Conoco in this case) at which Conoco's dissatisfaction with the apparent conflict is first disclosed;

July 18, 1990     Discussion between Hammett, Douglass and Rudge regarding the conflict issue; dispute as to existence of complaint by Rudge at this meeting;

August 16, 1990     Hammett files Fourth Amended Petition supposedly deleting fraud and punitive damage claims against Conoco;

August 24, 1990     Motion to Disqualify filed;

August 31, 1990    Evidentiary hearing on disqualification;

September 28, 1990    Order denying motion;

October 16, 1990    Original trial setting is passed;

November 8, 1990    Denial of motion reaffirmed by written motion.

### Discussion

The applicable rule in this case is found in the Texas Disciplinary Rules of Professional Conduct, Rule 1.06, Tex.Gov't Code Ann. Title 2, Subtitle G—Appendix (Vernon Supp.1991). Subsection (a) prohibits representation of opposing parties in the same litigation, not applicable here. Subsection (b)(1) prohibits representation of one client in a matter bearing a substantial relationship to the representation of another client when those clients' interests are directly adverse to each other. This subsection is equally inapplicable, both on the merits as reflected in the evidentiary record and due to the fact that Relator has expressly abandoned its trial court complaint based upon the substantial relationship test. Relator has also abandoned its complaint based upon former representation of Conoco by Hammett and Taylor in the UTTCO suit. This mandamus action therefor centers upon the narrow issue of alleged conflict of interests arising from current representation of adversary clients—Hammett and Taylor having brought the suit on behalf of Discovery Operating with them to the firm of SD & L at a time when that firm was representing Conoco in six other law suits on unrelated matters.

■■ This narrow issue and the propriety of Respondent's ruling must be assayed in terms of Rule 1.06(b)(2), (c) and (e). No findings of fact or conclusions of law were requested by the Relator. Consequently, a review of the trial judge's decision, under mandamus standards of review, necessitates consideration of: (1) the existence of a reasonably apparent conflict of interest; (2) effective consent by Conoco to such multiple representation, (3) waiver of complaint by Conoco, and (4) whether any injury to Conoco as a result of this conflict is an appropriate basis for extraordinary mandamus relief.

Although advanced by the real parties in interest as a possible ground, consent is a highly questionable basis for the Respondent's ruling. Hammett testified that he contacted Conoco's general counsel, Rudge, twice regarding his representation of Discovery Operating. In both instances, the contact consisted of brief telephone exchanges. Hammett testified that in neither instance did he believe a disqualifying conflict existed. Hammett insisted that this was merely a "courtesy" to Conoco because of his prior relationship with them. The first contact occurred within two or three days of Conoco's letter notice that it had purchased Enerfin. Hammett was still with Butler–Binion, and the "courtesy" only related to Hammett's involvement with the Conoco suit against UTTCO in 1988. Hammett again contacted Rudge shortly after he and Taylor moved to SD & L, this time referencing the continuation of the Discovery Operating lawsuit in the context of SD & L's representation of Conoco in the other six suits. Hammett testified that in both instances Rudge expressed understanding, noted that "these things do happen," and voiced no objection.

■■ Rule 1.06(c) permits an attorney or law firm to continue multiple representation of adversary clients where the attorney *reasonably* believes his representation of each client will not be materially affected *and* consent is obtained from each client after full disclosure of the existence, nature, implications and possible adverse consequences of such multiple representation. In this case, the evidentiary factors bearing upon the existence of effective consent include:

(1) Although Rudge was an attorney and general counsel for Conoco, there was no evidence of his familiarity with the details of any of the seven lawsuits involved, i.e. no informed consent;

(2) Hammett himself was unfamiliar with the other six lawsuits and did not discuss the Rule 1.06(c)(2) factors with Rudge;

(3) The outside counsel defending Conoco in the Discovery Operating suit (Kemp–Smith) was not a participant in these dialogues between Hammett and Rudge; and

(4) Hammett himself admitted in his testimony that his discussions with Rudge could not satisfy the effective, informed consent standard of Rule 1.06(c)(2).

It is apparent from the record that consent by Conoco cannot provide a basis for the Respondent's ruling.

■ Waiver of disqualification is a more viable theory upon which the Respondent could have based his decision. The only authority offered by Relator in opposition to the waiver theory is *Ransburg Corporation v. Champion Spark Plug Company*, 648 F.Supp. 1040, 1046 (N.D.Ill.1986). The outcome in *Ransburg* is not at odds with the Respondent's ruling. In that case, there was simply no evidentiary basis for imposing a waiver result. The challenged law firm had two offices, one in Chicago, Illinois, and one in Toledo, Ohio. The Chicago office had represented Ransburg for thirty years at the time the suit was filed. The managing partner of the Toledo office had represented Champion in various matters for many years. In addition, one year prior to the suit, the Toledo office hired new counsel who had been actively representing Champion in patent matters and brought that relationship with him. The suit was filed for Ransburg against Champion on January 7, 1986. Seven days later, Champion notified the firm that it was discontinuing its relationship due to the conflict. The firm was directed to complete certain work in progress, but all work ceased within sixteen days of the filing of the suit and Champion removed all of its files at that time.

By contrast, in the present case, Conoco was first advised of a possible conflict on or about October 1, 1989—less than two months after the suit was filed, three days after Conoco revealed itself as an interested party, two months before it was joined formally as a party, and nearly eleven months before the Motion to Disqualify was filed (i.e. one and one-half months before the scheduled trial date). Conoco may contend that this lapse of time should be disregarded because that particular basis for disqualification (Hammett's prior representation of Conoco against UTTCO) has been abandoned. It was significant enough in Conoco's perception to be incorporated in its trial court motion, evidentiary presentation and argument. It is probative on the issue of waiver.

Hammett again alerted Conoco to potential conflict involving SD & L shortly after joining that firm on April 13, 1990, four months prior to the filing of the Motion to Disqualify. This period of inaction is shorter, but also more significant in the context of the October 16 trial setting. The period alone is probably sufficient to support a waiver finding. Even more telling, however, is the proffered excuse for this delay by Conoco. Was Conoco seeking and discussing a withdrawal by SD & L from both sides of the case? No. Conoco wanted SD & L to continue to represent Conoco, but abandon Discovery Operating. Rule 1.06(e) provides that a conflict arising from multiple representation of adversary clients may be resolved by withdrawal from *one* or more of the relationships. From April to August, withdrawal from only one side was acceptable to Conoco, *as long as it was the other side*. The ramifications of withdrawal under subsection (e) are discussed further below. In any event, the record presents a sufficient basis upon which Respondent could have concluded that the disqualification, if any, was waived.

■ Conoco asserts that since this alleged conflict involves multiple representation of current clients, that the substantial relationship test is inapplicable. Instead, Conoco contends that the record reflects a prima facie case of disqualification, with a consequent unrebuttable presumption of harm and a *per se* rule of disqualification. There is no real need to assess Conoco's cited authority in this regard for even if the higher standard is applicable, the Respondent's decision reflects no abuse of discretion.

■ The higher standard for which Conoco argues is embodied in Rule 1.06(b)(2) which requires disqualification when the multiple representation gives rise to even "a reasonable appearance" that the representation of one client will be adversely limited by the representation responsibilities to the other. Even a Rule 1.06(b)(2) disqualification, however, may be corrected by withdrawal from one or more of the representations under subsection (e). Conoco has scrupulously avoided a discussion of this subsection, both in the trial court and on appeal. Indeed, at one point in the proceedings below, counsel for Conoco was reading verbatim from Rule 1.06 until he reached the withdrawal provision. In assessing the substantive merits of the Respondent's ruling under Rule 1.06(b)(2), this Court must consider:

(1) The interests to be protected by Rule 1.06(b)(2);

(2) The effect of subsection (e), SD & L's withdrawal from the *Benavides* case, and the present status of the other five cases in which SD & L represents Conoco; and

(3) The *reasonable* impact of the present status of representations by SD & L upon the interests protected by the rule.

The interests to be protected by the disqualification rule include: the preservation of the intangible representation elements of loyalty and client confidence essential to any attorney-client relationship, the preservation of client confidences, the assurance of unfettered advocacy on behalf of each client, and avoidance of additional costs of representation and litigation occasioned by inopportune changes in counsel. *See generally* Comment to Rule 1.06. It is with these factors in mind that the trial judge was required to assess the reasonable appearance of adverse limitations on full representation of Conoco by SD & L and the adequacy of SD & L's withdrawal (at Conoco's request) from only the representation in the *Benavides* case. While the substantial relationship test is no longer an issue in this action as a dispositive formulation, the same underlying factual considerations are pertinent to the foregoing assessment.

With regard to the issues of loyalty and full provision of unlimited advocacy skills, the record reflects no reasonable detriment to Conoco in the pending litigation. In accordance with Conoco's demand, SD & L withdrew from the *Benavides* case. The *City of McAllen* case was settled and dismissed on April 1, 1989. The *Blair Oil* case was settled and dismissed on February 2, 1990. Conoco has made no suggestion that the settlements reached in those cases, with SD & L's assistance, are suspect or tainted in terms of SD & L selling its client short due to the alleged conflict presently under scrutiny. Indeed, the former was dismissed prior to the filing of the instant suit, and the latter was dismissed prior to the move by Hammett and Taylor to SD & L. The *Hess, Hunt,* and *Schnell* cases are still pending and Conoco has continued to utilize SD & L's services in those suits. Those cases, like *Blair Oil,* involve suits by Conoco for conversion of its gas rights in wells in north Texas. The focus is upon contract rights to various categories of gas. Although still pending, final settlement agreements have been reached. Formalization is all that is wanting, and that is being jointly handled by counsel for Conoco and counsel from SD & L. As with *City of McAllen* and *Blair Oil,* Conoco has not suggested that the settlement agreements are suspect and tainted by SD & L's alleged conflict of interest. Indeed, unlike *Benavides,* Conoco has evidenced a desire, after full awareness and contested hearing, that SD & L continue to pursue completion of these settlement agreements.

■ Rule 1.06(b)(2) requires disqualification upon a *reasonable* appearance of unduly diminished representational services by SD & L. A scrutiny of the nature of the seven suits involved, the status of the litigation and the present status of SD & L representation renders it totally *unreasonable* to believe that there is any motivation, benefit or profit for either SD & L or Discovery Operating to be gained by a curtailment of SD & L's representation of Conoco in the other suits.

■ The same is true with regard to disclosure of confidences. There was no evidence of any exposure of any confidences to SD & L which would enhance Discovery Operating's posture in its suit against Conoco, or undermine Conoco's position in that same suit. Mr. Howell's testimony that SD & L personnel walked through Conoco's entire facility and were exposed to thousands of documents and internal policies and procedures is insufficient. Counsel for Conoco, Jad Davis, attempted to identify similar issues between the lawsuits, but his efforts amount to little more than demonstrating that, for instance, two separate negligence cases both involve duty, breach of duty, proximate cause and damages. Such generic identification of material elements is insufficient to establish a disqualification basis.

■ There is no question that the change in counsel by Conoco less than two months before trial will impose a higher cost of litigation for Conoco. There will necessarily be some redundant work and doubling of expenses as new counsel familiarizes himself with the case, duplicating work already done by SD & L and already paid for by Conoco. This would be true, however, whether SD & L withdrew from only Conoco's side or both sides. Furthermore, this complaint of increased cost, if attributable to actionable fault on the part of SD & L, is susceptible to recompense by money damages. With such an adequate remedy at law available, this complaint provides no basis for extraordinary mandamus relief.

*Conclusion*

Under the circumstances of this case, we can find no basis for granting mandamus relief. Although unclear, the trial judge could have reasonably based his decision either on waiver of the disqualification or on the absence of any *reasonable* appearance of harm from the alleged conflict. Given the intangible elements of loyalty and client confidence in full devotion by counsel, the best that can be said for Conoco's position is that the conflict may have presented an affront to those interests in the *Benavides* case alone, and that has

been corrected by SD & L's withdrawal in that case. Nothing in this record supports a conclusion that a one-sided withdrawal in the present suit is insufficient under subsection (e) of Rule 1.06. The other suits have either settled and been dismissed or have been settled with dismissal pending. Conoco's approach to those cases implicitly concedes no injury to the intangible elements of loyalty and client confidence in counsel's full devotion of advocacy skills. Accordingly, the trial judge could have reasonably concluded that the only conceivable detriment to Conoco was in the *Benavides* case and that has been adequately cured by the withdrawal of SD & L. The record reflects no abuse of discretion on the part of the Respondent.

Accordingly, Conoco's petition for writ of mandamus is denied.