**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed October 15, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00566-CV

### IN RE DEBRA C. GUNN, M.D., Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**Probate Court No. 2**
**Harris County, Texas**
**Trial Court Cause No. 352,923-401**

## MEMORANDUM OPINION

Relator Debra C. Gunn, M.D. filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Mike Wood, presiding judge of Probate Court No. 2 of Harris County, to set aside his June 11, 2013, order granting a post-verdict motion to disqualify relator's trial counsel. Relator also filed a motion to stay proceedings below pending a decision on her petition. *See*

Tex. R. App. P. 52.10. After receiving notification that the parties were unsuccessful in their attempt to reach an agreement, this court granted the motion for stay on July 26, 2013, and requested the real parties-in-interest to file responses to the petition. Responses have now been filed. We conditionally grant mandamus relief.

## I. Factual and Procedural Background

In 2006, Aaron McCoy, as permanent guardian for his wife (the plaintiff), filed the underlying medical malpractice action, alleging that the defendants' negligence caused his wife's brain damage. Relator and her professional association/employer, Obstetrical & Gynecological Associates (OGA), were named as defendants.[1] The plaintiff alleged that OGA was vicariously liable for relator's acts or omissions.[2] It is undisputed that relator and OGA shared counsel, Barbara Hilburn and her firm (Hilburn), during the nearly five years preceding trial.

In September of 2011, about six weeks before trial, OGA retained separate trial counsel, Michael Feehan. The case was tried to a jury, which rendered a verdict in November of 2011. The jury found relator's negligence caused the plaintiff's injuries and awarded more than $10 million in compensatory damages.

[1] OGA was named in the Original Petition as "Obstetrical and Gynecological Associates, P.A." The record reflects that OGA converted to a Professional Limited Liability Company (PLLC) in 2011. Claims against other defendants were settled and are not at issue here.

[2] In an interlocutory appeal, this court affirmed an order denying OGA's motion to dismiss for failure to file an expert report pursuant to Chapter 74 of the Civil Practice and Remedies Code, holding that the plaintiff's claims against OGA were not direct-liability claims for which a separate expert report was required. *See Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 110 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

On December 23, 2011, the plaintiff moved for judgment on the verdict, after applying settlement credits. No judgment has been signed, however. Instead of urging the trial court to sign a judgment, the plaintiff has filed post-verdict amended pleadings to correct OGA's status as a PLLC and add new defendants.

In August of 2012, OGA's CFO requested that relator attend a meeting at which a new attorney for OGA, Spencer Markle, was also present. At the meeting, relator refused to join in OGA's plan to sue its defense attorneys. On December 3, 2012, Markle wrote to relator advising her that he intended to file suit against her for indemnity. Markle then moved to substitute as counsel in place of OGA's previous appellate counsel, but OGA's trial counsel, Feehan, apparently also continues to represent OGA.[3] On January 30, 2013, Markle filed a pleading asserting another "Original Answer" on behalf of OGA, a cross-claim for indemnity against relator, and a third-party action against Hilburn for legal malpractice. On February 15, 2013, OGA moved to disqualify Hilburn, based upon its suit against relator for indemnity. The motion was amended and/or supplemented twice. On June 11, 2013, the trial court signed an order granting OGA's first supplemental motion, and this proceeding followed.

## II. Mandamus Standard

Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and there is no adequate remedy by appeal. *Walker v.*

---

[3] Relator asserts that the trial court's records do not reflect that Markle's motion to substitute as counsel was granted and Michael Feehan remains OGA's attorney-in-charge. Relator filed a motion for Markle to show authority. *See* Tex. R. Civ. P. 12. The record indicates the court expressed its satisfaction with the evidence presented to show that OGA's board had retained Markle and the Rule 12 motion was denied.

*Packer*, 827 S.W.2d 833, 840–44 (Tex. 1992). An appellate court may not deal with disputed areas of fact in a mandamus proceeding. *See In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006). Therefore, relator must establish that the trial court could reasonably have reached only one decision. *Walker*, 827 S.W.2d at 840.

We cannot defer to a lower court's judgment on matters of law, however. *Id.* The trial court has no "discretion" in determining what the law is or applying the law to the facts, and a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

Because there is no adequate remedy by appeal, mandamus relief is appropriate to correct a trial court's clear abuse of discretion in disqualifying a party's chosen counsel. *See In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011).

### III. Disqualification of Counsel

A motion to disqualify counsel is the proper procedural vehicle to challenge an attorney's representation that is adverse to a former client. *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Disqualification is a severe remedy, which can result in immediate harm by depriving a party of the right to have counsel of its choice. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 423 (Tex. 2002). In addition to the ability of a client to have the lawyer of its choice, other factors weighing against granting a motion to disqualify a party's attorney include concerns about the prejudice and economic harm that could result to a client when the disqualification of its counsel is ordered, and concerns about motions to disqualify being abused as a dilatory tactic. *In re Columbia Valley Healthcare Sys.,*

4

*L.P.* 320 S.W.3d 819, 825 (Tex. 2010). The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic. *Spears v. Fourth Ct. App.*, 797 S.W.2d 654, 656 (Tex. 1990).

## A. Burden of Proof

The movant bears the burden to prove that the attorney should be disqualified. *See In re Sanders,* 153 S.W.3d 54, 57 (Tex. 2004) (stating the party requesting disqualification must demonstrate an opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice); *In re Nitla*, 92 S.W.3d at 423 (holding that the party moving to disqualify opposing counsel who reviewed privileged documents must show actual harm and that disqualification is necessary because the trial court lacks any lesser means to remedy the moving party's harm); *NCNB Tex. Nat'l Bank*, 765 S.W.2d at 400 (requiring moving party to prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to the former counsel will be divulged to the present adversary). This burden requires proof of specific facts to meet the exacting standard necessary to establish disqualification is required. *See Spears*, 797 S.W.2d at 656.

## B. The Texas Disciplinary Rules of Professional Conduct

The Texas Disciplinary Rules of Professional Conduct do not determine whether counsel is disqualified, but they do provide guidelines and suggest the relevant issues courts should consider. *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996). Even if a lawyer violates a disciplinary rule,

however, the party requesting disqualification must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification. *See In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 336 (Tex. 1999).

In its motion for disqualification, OGA asserted that Hilburn's continued representation of relator is in violation of Rule 1.09, which addresses conflicts of interest that arise in representing someone who is adverse to a former client. *See* Tex. Disc. R. Prof'l Conduct 1.09, *reprinted in* Gov't Code tit. 2, subtit. G, app. A, art. 10, § 9. While OGA argued below that a violation of this rule mandated disqualification, we note that Rule 1.09 does not absolutely prohibit a lawyer from representing a client against a former client. *See id.*, cmt. 3. In addition, in this case, OGA has sued Hilburn for malpractice, which impacts Hilburn's duty of confidentiality to her former client. Rule 1.05 permits a lawyer to reveal confidential information "[t]o the extent reasonably necessary to enforce a claim or establish a defense on behalf of the lawyer in a controversy between the lawyer and the client." Tex. Disc. R. Prof'l Conduct 1.05(c)(5), *reprinted in* Gov't Code tit. 2, subtit. G, app. A, art. 10, § 9.

OGA also cited Rule 1.06(d) to the trial court, which provides: "A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute." Tex. Disc. R. Prof'l Conduct 1.06(d), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A, art. 10, § 9. Thus, while not encouraged, concurrent representation of adverse clients is permitted in Texas in certain circumstances. *See Conoco, Inc. v. Baskin*, 803 S.W.2d 416, 419 (Tex. App.—El Paso 1991, orig. proceeding). Rule 1.06(c) sets

out limitations on concurrent representation. *See* Tex. Disc. R. Prof'l Conduct 1.06(c), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A, art. 10, § 9 (permitting an attorney or law firm to continue multiple representation of adverse clients where the attorney reasonably believes his representation of each client will not be materially affected and consent is obtained from each client after full disclosure of the existence, nature, implications and possible adverse consequences of such multiple representation).

## IV. Relator's Issues

In her first issue, relator alleges that the trial court abused its discretion in granting OGA's motion to disqualify her counsel for several reasons. Relator asserts in her second issue that she has no adequate remedy by appeal. We first address relator's contention that OGA failed to meet its burden to establish that disqualification is required because its motion contained no specific factual allegations or evidentiary support.

## A. Sufficiency of OGA's Motion

OGA's motion to disqualify, as amended and supplemented, made general allegations, was not verified, and included no affidavit or evidence to support disqualification. OGA's motion stated:

> Opposing counsel personally represented Defendant OGA and Defendant Debra Gunn, M.D. in a case involving a matter factually related to this present case. Actually, opposing counsel, Barbara A. Hilburn, still represents Defendant Debra Gunn, M.D. in these present action(s) before this Court. The Defendants Debra Gunn, M.D. and Defendant OGA stand in adversarial opposition to each other at this present place and time in these proceedings. There is, therefore, a

7

genuine threat that Defendant OGA's former confidences will be divulged to Defendant Debra Gunn, M.D. through her present counsel, Barbara A. Hilburn.

OGA stated in its motion that Hilburn viewed "massive amounts of court documents and correspondence" in her representation of both defendants, and there is a threat that OGA's former confidences will be divulged to relator through Hilburn. Yet it failed to demonstrate how confidential information could be used against it in an indemnity action against relator or explain how it would be harmed by Hilburn's continued representation of relator.

To support the allegations in its motion, OGA cited to the unverified allegations in its pleadings and brief in support of its motion. OGA provided no affidavits or witnesses to establish grounds for disqualification. While disqualification was discussed at hearings held in conjunction with other matters on March 5, 2013, and June 11, 2013, there was no evidence adduced at the hearings to demonstrate that disqualification was necessary. Before this court, OGA attempts to shift the burden to relator to establish that she will be harmed by the disqualification of her counsel. It was OGA's burden to establish its harm posed by Hilburn's continued representation of relator, and it failed to meet its burden.

In her response to the motion to disqualify Hilburn, relator provided Hilburn's affidavit, in which she averred that she represented relator and OGA pursuant to a joint defense arrangement, and she had not accepted any representation adverse to OGA after the verdict, or in any case that was substantially related to her representation of OGA. Hilburn swore she had never received any confidential or privileged information from OGA. To the contrary,

Hilburn asserted that she received only contracts and other documents in relator's custody related to relator's contract with OGA that were disclosed to all parties to the litigation.

OGA seeks disqualification because of an alleged conflict of interest, in violation of disciplinary rules, based on Hilburn's former representation of OGA. As discussed above, the disciplinary rules are guidelines—not controlling standards—for disqualification motions. *In re Nitla*, 92 S.W.3d at 422. An allegation of a violation of the rules does not necessarily require disqualification; the party requesting disqualification must demonstrate that disqualification is required. *In re Users Sys. Servs.,* 22 S.W.3d at 336. As such, OGA may not rely solely on these allegations of disciplinary rule violations to support disqualification.

As authority for disqualification, OGA cited *In re Roseland Oil & Gas, Inc.,* 68 S.W.3d 784 (Tex. App.—Eastland 2001, orig. proceeding). Roseland Oil & Gas, Inc. sued several defendants regarding an oil and gas lease. *Id.* at 786. All of the defendants were originally represented by the same counsel. *Id.* After discovery had begun, counsel withdrew from representing two defendants. *Id.* Roseland, joined by the former clients, moved to disqualify counsel from continuing to represent the remaining defendants. The Eastland Court of Appeals held that the moving defendants were exposed to serious risk from allegations made by the other defendants, and the court discussed potential scenarios where the challenged attorney "might be forced to make the choice between zealously representing his clients and maintaining the confidentiality of information received from his former clients." *Id.* at 787–88.

The facts in *Roseland* are quite different than those in this case. OGA did not allege any specific risk of disclosure of its confidential information in its suit for indemnity or otherwise show how it will be harmed by Hilburn's continued representation of relator. Hilburn presented an uncontroverted affidavit that she possessed no confidential information belonging to OGA. *Roseland* does not support disqualification on the facts of this case.

OGA also cited *National Medical Enterprises, Inc. v. Godbey* to support disqualification. 924 S.W.2d 123 (Tex. 1996). In that case, the challenged attorney admitted that he had obtained confidential information about NME in substantially related cases, and he had pledged to preserve those confidences in a joint defense agreement. *Id.* at 129. He could not therefore prosecute pending claims against NME. *Id.* Accordingly, the motions to disqualify the lawyer and his firm should have been granted. *Id.* at 131–32. In this case, Hilburn expressly denied receiving any confidential information regarding OGA, and OGA provided no evidence to the contrary. *Godbey* likewise provides no support for disqualification on the facts of this case.

The Texas Supreme Court has cautioned that a motion to disqualify will have the appearance of a tactical weapon when it lacks supporting proof. *See Spears,* 797 S.W.2d at 658. The court has condemned speculative and contingent allegations in motions to disqualify. *Id.* (citing *NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400). OGA's motion lacks supporting proof.

A trial court abuses its discretion in granting a motion to disqualify if no evidence is presented proving that disqualification is warranted. *In re Chonody*, 49 S.W.3d 376, 380 (Tex. App.—Fort Worth 2000, orig. proceeding) (granting

mandamus where party moving for disqualification failed to present evidence showing a genuine threat exists that the attorney may divulge confidential information obtained in the other representation). Here, OGA failed to present evidence to establish Hilburn's disqualification. Not only did OGA wholly fail to prove that Hilburn should be disqualified, but also it failed to allege facts which, if supported by evidence, would authorize disqualification. Accordingly, the trial court abused its discretion in granting OGA's motions to disqualify Hilburn.

## B. Waiver

In addition to the motions' lack of specificity and evidentiary support, relator asserts that OGA waited too long to raise the issue of a conflict with Hilburn. She asserts that OGA offered no explanation justifying its delay in filing its disqualification motions, waiving its complaint. Not only did OGA agree to joint representation with relator for five years, OGA waited over a year after it obtained separate counsel before filing its motion to disqualify.

In determining waiver, courts consider the length of time between when the conflict became apparent and the filing of the motion. *In re La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d 688, 689 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). A party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint. *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994) (per curiam) (finding waiver after a delay of six and a half months); *In re La. Tex. Healthcare Mgmt.,* 349 S.W.3d at 689 (holding the record supported the trial court's implied finding that relators waived their right to seek disqualification by waiting thirteen months after conflict became apparent); *Conoco*, 803 S.W.2d at 420 (finding waiver of disqualification where relator was

alerted to the potential conflict six months prior to the trial date and four months prior to filing of the motion to disqualify).

In this case, OGA contends that Hilburn may not continue to represent relator because Hilburn formerly represented OGA, who now is adverse to relator because of its claim for indemnity. OGA was aware of the potential indemnity claim before trial. In its response to this petition, OGA acknowledges that "Hilburn represented OGA and Dr. Gunn for at least five years in this lawsuit. It was not until one week before the trial setting in late September, 2011 that Hilburn finally recognized the severe conflict of interest in representing both Defendants OGA and Dr. Gunn and withdrew as counsel for OGA." Thus, OGA acknowledges that it was aware of the conflict a few weeks before trial when it obtained new representation. OGA's first motion to disqualify Hilburn was not filed until February of 2013, some fifteen months later. At the very latest, its conflict with relator and her counsel was made clear in November of 2011 when the jury returned a $10 million verdict against relator for which OGA may be held vicariously liable.

The Texas Supreme Court considered waiver of a motion to disqualify counsel in *In re EPIC Holdings, Inc*. 985 S.W.2d 41 (Tex. 1998). The court held that an employee's attorneys were disqualified from representing her in a suit challenging the terms of a merger involving EPIC, which was owned in part by its employee stock ownership plan, because of the attorneys' previous affiliation with the firm involved in the formation of corporation. *Id.* at 43. None of the factors that the Texas Supreme Court considered in rejecting waiver in *EPIC Holdings* are present in this case. The court held that EPIC had satisfactorily explained a delay

12

of four months after suit was filed before it raised an issue and a further delay of seven more months before filing motions to disqualify counsel. *Id.* at 52–53. Counsel was unaware of the connection between the attorneys and law firms who previously represented EPIC that raised a potential conflict until suit had been pending for four months. *Id.* at 47. The parties then exchanged information related to the potential conflict and disqualification issues over the next three months. *Id.* It did not become apparent until trial began that the plaintiff's case involved criticism of counsel's work on EPIC's formation. *Id.* Thus, the grounds for disqualification were based in large part on the events occurring during trial that made the conflict become apparent. *Id.*

In contrast, the ground for disqualification in this case is based on OGA's claim for indemnification from relator, the basis of which has existed since suit was filed, or at the latest, since the jury verdict in 2011. The Texas Supreme Court has recognized that when indemnification is at issue, the adversity between the parties is "not merely hypothetical." *EPIC Holdings,* 985 S.W.2d at 50. "Adversity is a product of the likelihood of the risk [that a lawsuit poses to a person's interests] and the seriousness of its consequences." *Nat'l Med. Enters., Inc.,* 924 S.W.2d at 132. When indemnification is at issue, a lawsuit poses an "almost certain risk" of liability, if only for attorney's fees. *EPIC Holdings,* 985 S.W.2d at 50. A comment to the disciplinary rules recognizes that a conflict exists when an attorney represents co-defendants who are not only actually adverse, but where the potential for conflict exists or may develop as a result of trial or settlement. *See* Tex. Disc. R. Prof'l Conduct 1.06, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G app. A, art. X, § 9, cmt. 3.

There are no material factual disputes regarding OGA's knowledge of the conflict and the delay in filing its motion for disqualification. Because of the long delay in filing a motion to disqualify in this case, we hold that OGA has waived its right to seek Hilburn's disqualification. Therefore, the trial court's implied finding of no waiver constitutes an abuse of discretion.

## V. Conclusion

We hold that the trial court abused its discretion in granting OGA's post-verdict motion to disqualify Hilburn and relator has no adequate remedy by appeal. Accordingly, we conditionally grant the writ of mandamus and direct the trial court to vacate its order granting OGA's motion to disqualify Hilburn. The writ will issue only if the trial court fails to comply. This court's stay of proceedings is lifted so that the trial court may vacate its order, at which time the stay is fully dissolved.

PER CURIAM

Panel Consists of Justices McCally, Busby, and Donovan.

14