# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 17, 2023

Lyle W. Cayce
Clerk

———————

No. 18-30694

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ROBERT CUFF,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:14-CV-3384

———————————————————————

Before HIGGINBOTHAM, JONES, and OLDHAM, *Circuit Judges*.
EDITH H. JONES, *Circuit Judge*:

Robert Cuff, a federal prisoner, appeals the denial of this 28 U.S.C. § 2255 motion alleging breach of his plea agreement based on serious allegations against Assistant U.S. Attorneys and ineffective assistance of counsel. We disagree with the district court's application of the procedural bar to the breach-of-plea agreement claim and must reverse and remand but affirm its disposition of the ineffective assistance of counsel claim.

No. 18-30694

## I. Background

In 2011, a federal grand jury in Louisiana indicted Robert Cuff with three counts relating to his participation in an internet bulletin board dedicated to the distribution of child pornography. Cuff was arrested and his house in El Paso, Texas was searched. While searching Cuff's residence, law enforcement found videos of Cuff sexually abusing his girlfriend's five-year-old daughter. There was no evidence that these videos had been shared on the bulletin board. The videos were recorded in the Western District of Texas.

Cuff began negotiating a plea deal with the government after his arrest. According to his affidavit, Cuff's defense attorney, Stephen Karns, inquired whether charges would be brought against Cuff for the abuse of the five-year-old. He told the prosecutor for the Western District of Louisiana, AUSA Walker, that Karns "would need to know if [Cuff] was going to be prosecuted in Texas" before Cuff pled guilty to the charges involving the bulletin board in Louisiana. In response, Walker referred Karns to AUSA Brandy Gardes from the United States Attorney's Office in the Western District of Texas. Karns described his conversation with AUSA Gardes as follows:

> My conversation with AUSA Gardes was consistent with my conversation with AUSA Walker. From my conversation with AUSA Gardes, I understood that the Government would use the videos in the Western District of Louisiana proceedings to avoid having to use the victim as a witness. It was my understanding from my conversation with AUSA Walker and/or AUSA Gardes that the victim and/or her family were reluctant to be involved and that the Government believed that using the videos in Western Louisiana would permit the Government to avoid using the victim as a witness, but still cause Mr. Cuff to be sentenced in Western Louisiana for the

2

offenses which occurred in Texas because the offenses were on the videos. I also learned from AUSA Gardes that the state of Texas would not be prosecuting Mr. Cuff.

Cuff reached a plea deal with prosecutors in the Western District of Louisiana, and the district court accepted the agreement on December 1, 2011. In return for Cuff's guilty plea, the government dropped two of the charges it had brought against him, leaving only the charge for engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g). The agreement also stated that "the Government . . . will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of [Cuff's indictment]."

In spite of the plea agreement, a grand jury in the Western District of Texas indicted Cuff for sexually abusing the five-year-old. This transpired on December 14, 2011, two weeks after the judge in the Louisiana case accepted the plea agreement. The government moved to seal this new indictment, claiming that the "disclosure of the existence of the Indictment would seriously jeopardize the ability of law enforcement officers to locate the Defendant and apprehend him without incident." This was certainly false; Cuff had been in custody since July. The district judge in the Western District of Texas granted the motion.

The Order to Seal stipulated that the indictment would be made public when Cuff "was arrested." Yet it is unclear whether Cuff was actually arrested at this juncture. Because Cuff was already in custody, the United States Marshals Service lodged a detainer with the facility where he was being held on January 9, 2012. This notified the *facility* of the charges pending against Cuff, but by itself would not necessarily have notified *Cuff* of the charges. The document from the Marshals Service refers to the event both

as an "arrest" and a "detainer." The district court treated the event as an arrest and unsealed the indictment the next day.

Karns and Cuff claim that Cuff was never arrested and that they were unaware of the detainer. In fact, they assert that they were entirely unaware of the charges in the Western District of Texas until after Cuff had already been sentenced in the Western District of Louisiana in July 2012. Cuff also presents a Naval Criminal Investigative Service report indicating that the Texas U.S. Attorney's Office knew of the Louisiana prosecution as of December 2011 and intended to keep the indictment sealed until Cuff's sentencing. The judge in the Louisiana case and the United States Probation Office in Western Louisiana were also seemingly left unaware.

Meanwhile, back at the ranch, the Louisiana prosecution continued apace. Pursuant to the plea agreement, evidence of Cuff's abuse of the five-year-old was introduced for purposes of sentencing. The probation office made no mention of the Texas prosecution in its presentence report (PSR) in July 2012. Indeed, it erroneously stated that there were no additional pending charges against Cuff. The PSR recommended a sentencing enhancement based on Cuff's child abuse. With the enhancement, Cuff's sentencing range was life imprisonment. Cuff moved to withdraw his guilty plea on the grounds that an anti-malarial drug he was prescribed while serving in the U.S. Navy had driven him insane at the time he pled guilty. The district court denied the motion, adopted the PSR's analysis, and sentenced Cuff to life in July 2012. Cuff appealed.

In August 2012, while his appeal was pending, Cuff was arrested for the Texas charges. Now formally apprised of the Texas prosecution, Cuff

argued that it supported his motion to withdraw the guilty plea.[1]  However, he did not raise the breach-of-plea agreement claim that is the gravamen of his § 2255 motion here.  Instead, he alleged misconduct only as an aspect of whether the district court erred in not vacating the plea agreement pursuant to the factors outlined in *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).  This court affirmed the conviction.  The court held that the district court did not abuse its discretion under *Carr* and specifically noted that Cuff did not develop a prosecutorial misconduct claim.  *United States v. Cuff*, 538 F. App'x 411, 414 (5th Cir. 2013).

In December 2014, Cuff sought to vacate his sentence under § 2255, arguing among other things that the government breached his plea agreement.  After Cuff filed but before the district court ruled on the motion, the Texas USAO dismissed its case against Cuff.  The district court then held that the breach-of-plea agreement claim was procedurally defaulted because Cuff had not raised it in his direct appeal.  Cuff timely appealed, and this court granted a Certificate of Appealability on the issues related to the breach-of-plea claim.

## II. Discussion

Cuff raises three issues: *first*, whether the breach-of-plea agreement claim was procedurally defaulted; *second*, whether the plea agreement was breached; and *third*, whether the government's actions deprived his counsel of essential information so as to give rise to an ineffective-assistance-of-

---

[1] For example, Cuff's brief on direct appeal from his conviction stated that "if Cuff and his counsel had known that he was to be prosecuted in Texas for this offense, it would have had a tremendous impact on the decisions that he made in the Western District of Louisiana.  Moreover, if Cuff had known that the United States Attorney in the Western District of Texas not only intended to prosecute him, but that the prosecutor intended to use his federal conviction in Louisiana to enhance his potential sentence in Texas, his decisionmaking process would have been very different indeed."

counsel claim. We remand the first two issues to the district court and affirm on the third issue.

When assessing a denial of a § 2255 motion, this court reviews legal conclusions *de novo* and factual findings for clear error. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008).

### *A. Procedural Default*

When a defendant fails to raise a claim on direct review, that claim is usually procedurally barred in collateral proceedings. *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998). Such claims may be raised on collateral review "only if the defendant can first demonstrate either 'cause' and actual prejudice . . . or that he is 'actually innocent.'" *Id.* "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693 (2003).

There are instances where the procedural default rule does not advance the interests that justify its existence. Accordingly, some claims can be raised for the first time in a collateral proceeding—the prime example being ineffective-assistance-of-counsel claims. *Id.* This exception exists because defendants otherwise would be compelled to "raise the issue before there has been an opportunity fully to develop the factual predicate for the claim" and litigate "in a forum not best suited to assess those facts." *Id.* at 504, 1694.

Cuff argues that his breach-of-plea agreement claim, like one for ineffective assistance of counsel, should be exempt from procedural default analysis. He avers that he could not have raised his claim because he did not learn of the second indictment until after he had been sentenced. Thus, this

§ 2255 motion provided his first opportunity to raise the issue. He points to several cases where this court has not applied the usual procedural default rules to support this argument. The most relevant are two instances where the court considered breach-of-plea agreement claims even though the defendant apparently did not raise the issue on appeal.[2] *See United States v. Borders*, 992 F.2d 563, 566 (5th Cir. 1993), *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

If Cuff was not on notice of the indictment, it is unclear whether procedural default analysis should apply at all. The breach-of-plea agreement cases cited by Cuff are outliers. In cases where the issue has been considered, procedural default is applied to such claims. *See, e.g.*, *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019); *United States v. Sullivan*, 241 F. App'x 217, 218 (5th Cir. 2007). Yet in cases like *Allen*, the relevant facts arose at or before sentencing, and the defendants could have raised their complaints in Rule 11(d) motions before the sentencing courts. *See Allen*, 918 F.3d at 458–59; *Sullivan*, 241 F. App'x at 218–19. The parties do not identify, and this court has not found, any cases where the defendant claims to have been put on notice of the factual basis for his claim *after* appeal.

Cuff could not have returned to the sentencing court for relief on the alleged facts. This court has held that when the government breaches its plea agreement with the defendant, that defendant "may seek one of two remedies: (1) specific performance, requiring that the sentence be vacated and that a different judge sentence the defendant; or (2) withdrawal of the

---

[2] Cuff also cites *United States v. Casiano*, 929 F.2d 1046, 1051 (5th Cir. 1991) and *United States v. Harper*, 901 F.2d 471, 472–73 (5th Cir. 1990). But neither case is analogous, and both involved established exceptions to procedural default. *Casiano* dealt with an ineffective assistance of counsel claim and *Harper* dealt with a scenario where the court of conviction lacked jurisdiction over the defendant. *Casiano*, 929 F.2d at 1051; *Harper*, 901 F.2d at 472.

guilty plea." *United States v. Williams*, 821 F.3d 656, 658 (5th Cir. 2016) (quoting *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002)). Cuff seeks to withdraw his guilty plea in this case. Yet the Federal Rules of Criminal Procedure prevents the district court from granting this remedy:

> Finality of a Guilty or Nolo Contendere Plea. After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

Fed. R. Crim. P. 11(e).

This court's guidance makes clear that Cuff's claim was also inappropriate for direct appeal because it requires factual development by a district court. As the Fifth Circuit has repeatedly found, "[a]rguments not raised in district court will not be considered absent 'extraordinary circumstances,' and '[e]xtraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it.'" *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012) (quoting *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996)). Cuff's breach of plea agreement claim did not raise a pure question of law, as the sentencing court had no opportunity to make factual findings regarding exactly when the plea agreement would have been breached or when Cuff or Karns gained knowledge of breach. This court does not make findings in the first instance. *Pickett v. Tex. Tech Univ. Health Scis. Ctr.,* 37 F.4th 1013, 1019 (5th Cir. 2022). And as the government notes, when Cuff raised prosecutorial misconduct in his direct appeal, this court concluded that "he did not develop the facts supporting this claim, so we are not able to review it on appeal." *Cuff*, 538 F. App'x at 414. Because Cuff's claim was not cognizable on appeal, § 2255 represented the only remaining avenue of potential relief.

Cuff presents a defensible argument that the procedural bar should not apply on his version of the facts, but even if the procedural bar applies, Cuff's allegations can satisfy the cause-and-prejudice standard.

"A showing of cause requires that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule,' such as 'the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable.'" *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The "mere fact that counsel failed to recognize the factual or legal basis for a claim . . . does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486, 106 S. Ct. 2639, 2644 (1986). But to be barred from relief, a petitioner must have at least "constructive knowledge" of the basis for the claim. *Herbst v. Scott*, 42 F.3d 902, 906 (5th Cir. 1995); *see also Malone v. Johnson*, 252 F.3d 1356 (5th Cir. 2001).

If the underlying allegations are proven, Cuff can meet this standard. He has presented evidence that an AUSA in the Western District of Texas misled him about being prosecuted there, and government officials sealed the indictment against him on the false premise that he was still at large. He has also presented evidence that the government planned to keep the indictment a secret until after his sentencing. Moreover, even when the indictment was unsealed, it was allegedly not made "reasonably available to counsel," *Smith*, 515 F.3d at 403, and Cuff consequently did not have "constructive knowledge" of the indictment. *Herbst*, 42 F.3d at 906. Citizens do not bear the burden of searching PACER in all 94 federal judicial districts to determine whether or not the government has indicted them recently. *Cf. Doggett v. United States*, 505 U.S. 647, 653–54, 112 S. Ct. 2686, 2691 (1992) (finding, in the Speedy Trial Clause context, that a defendant is not on notice

to discover his own indictment). These allegations facially support a finding of cause.

As this discussion demonstrates, Cuff's argument relies on the proposition that he was not put on notice of the Texas indictment before his direct appeal. The parties dispute whether this is true, but the district court only addressed whether Cuff was aware of the indictment *during* his appeal. We may not resolve this disputed issue on appeal. It is fundamental that "factfinding is the basic responsibility of district courts, rather than appellate courts." *DeMarco v. United States*, 415 U.S. 449, 450, 94 S. Ct. 1185, 1186, n. (1974); *see also* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court [which imposed the sentence] shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.").

This is particularly true here where the record does not supply clear answers. The Marshals filed a detainer with the Bossier Parish Medical Facility in January of 2012, six months before Cuff's sentencing. The government appears to conflate "detainer" with "arrest," and it confusingly alleges that Cuff was "arrested" for a second time in August after it filed a motion to detain on the Texas charge. A detainer is not the same as arrest, but rather "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44, 113 S. Ct. 1085, 1087 (1993). The record contains no information indicating whether Bossier Parish Medical Facility notifies a prisoner that a detainer has been lodged, or whether it followed any such policy in this case. It is also not crystal clear that the word "arrested" in the government's motion to seal, cannot also

refer to a detainer, or that the government in fact unsealed the indictment in response to notifying Cuff or his counsel. These issues must be addressed by the district court.

Further factfinding is also necessary to decide whether Cuff was prejudiced. To show prejudice, "the petition must show 'not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Quarterman*, 515 F.3d at 403 (quoting *Murray*, 477 U.S. at 493). The government argues that Cuff cannot establish prejudice because the Louisiana USAO did not breach the plea agreement and because Cuff would have pled guilty even if he knew of the second indictment. As explained above, the district court is in the best position to determine the veracity of these claims. But the district court grounded its ruling on cause and never addressed the arguments regarding prejudice.

Therefore, we must remand to the district court with instructions to determine (1) whether Cuff or his counsel knew or should have known of the Texas indictment before Cuff's sentencing and (2) if not, whether Cuff was prejudiced.

## B. Breach

Until the question of procedural default is resolved, we are not in a position to decide whether Cuff's plea agreement was breached. The district court did not reach the issue after it held the claim procedurally barred. The district court will be best equipped to determine whether a breach occurred as part and parcel of its factfinding on remand.

## C. Ineffective Assistance of Counsel

Cuff's ineffective-assistance-of-counsel claim, however, cannot succeed. He argues that the government's failure to notify his attorney of the

second indictment resulted in a violation of his Sixth Amendment right to effective assistance of counsel.  But as the district court noted, none of the four ineffective-assistance-of-counsel claims that he raised in his § 2255 motion relate to the plea agreement.  The argument is therefore forfeit, and "[w]e do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021).  We already expressly denied a certificate of appealability on the issue for this reason.  Moreover, the claim lacks merit.  Cuff contends that his attorney—Karns—provided him "patently erroneous advice" regarding the guilty plea because Karns did not know about the second indictment, and that this amounted to ineffective assistance.  But, as all parties agree, the Texas USAO had not yet indicted Cuff at the time he entered his guilty plea.  Karns could not have known the indictment at that time, and he therefore could not have fallen below the "objective standard of reasonableness" *Strickland* requires.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

## III. Conclusion

For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART and REMAND to determine whether Cuff can overcome the procedural bar and, if so, whether the plea agreement was breached.

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

This is a straightforward case. Robert Cuff procedurally defaulted his claim that the Government breached his plea agreement, and he cannot show cause and prejudice to overcome that default. No fact-finding by the district court alters that result. Accordingly, I would affirm the district court's order in its entirety.

I.

Robert Cuff, also known by the username "slapalot," was part of an online bulletin board where he disseminated child pornography. To become a member, he had to submit an advertisement for child pornography as well as a certain amount of child pornography. As a member, he posted 43 pornographic files to the board—most of which depicted young children forced to engage in sexual acts with adults. The other board members elevated him to "VIP" status. When law enforcement arrested him and searched his residence in Texas, they discovered multiple videos of Cuff sexually abusing his girlfriend's five-year-old daughter.

Cuff was indicted in the Western District of Louisiana for engaging in a child exploitation enterprise, conspiracy to advertise the distribution of child pornography, and conspiracy to distribute child pornography. He was arrested in the Western District of Texas, and the U.S. Marshals Service transported him to the Western District of Louisiana. On December 1, 2011, he entered a plea agreement with the Western District of Louisiana U.S. Attorney's Office and pled guilty to the child exploitation charge. As part of the plea agreement, the Louisiana U.S. Attorney's Office stated: "[T]he Government agrees to dismiss the remaining Counts of the Second Superceding Indictment after sentencing and it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Second

Superceding Indictment." ROA.976–77. Cuff was then held in the Bossier Parish Medical Facility while he awaited sentencing.

On December 14, 2011, a grand jury in the Western District of Texas issued a sealed indictment, charging Cuff with aggravated sexual abuse, sexual exploitation of children, and sexual exploitation of minors. The magistrate judge ordered the indictment to be unsealed when the defendant was arrested. And the judge issued a warrant for Cuff's arrest that same day.

On January 9, 2012, a detainer was filed with the Bossier Parish Medical Facility by the U.S. Marshals Service on behalf of the Western District of Texas. It specified that Cuff had been arrested. The notice was sent to the U.S. Attorney's Office, U.S. District Clerk, U.S. Magistrate, U.S. Pre-Trial Services, and U.S. Marshals Service. The docket for the Western District of Texas case reflected that Cuff was arrested that day, and Cuff's indictment was unsealed the next day.

In July 2012, Cuff was sentenced in the Western District of Louisiana. At the time of Cuff's sentencing on the Louisiana charges, Cuff's Texas arrest was six months old. But he did not say to the district judge in Louisiana, "wait a minute, I don't want this Louisiana plea deal because the Government breached its promise in Texas." Rather he did not mention the arrest. The federal district court accepted the Louisiana plea agreement. And the court sentenced Cuff to life imprisonment and supervised release for life. He appealed his Louisiana conviction and sentence.

A few weeks later, while his Louisiana appeal was still pending, the Western District of Texas U.S. Attorney's Office filed an application for writ of habeas corpus in the Bossier Parish Medical Facility demanding Cuff's appearance in the Texas court. He was again arrested on August 29, 2012. Cuff's first attorney entered an appearance in the Texas case on August 30, 2012. And Cuff waived the right of personal appearance at his Texas

arraignment on September 4, 2012. Cuff's second attorney entered an appearance on October 12, 2012. And Cuff filed a series of motions to continue the Texas docket call between September 19, 2012, and August 1, 2013.

He filed his brief in the Fifth Circuit Court of Appeals challenging his Louisiana conviction on November 28, 2012. At that point, Cuff had known about the Texas proceedings for eleven months—ever since he was arrested on the Texas charges in January 2012. But at no point in his direct-appeal proceeding did Cuff ever complain that the Government breached his Louisiana plea agreement by indicting him in Texas. On August 7, 2013, a panel of this court affirmed Cuff's Louisiana sentence. Subsequently, the Western District of Texas dismissed the criminal charges against him.

Cuff now seeks to vindicate his breach-of-plea-agreement claim in federal habeas. This avenue is plainly foreclosed. I would affirm the district court because (I) Cuff procedurally defaulted this claim by failing to raise it on direct appeal and (II) Cuff cannot show cause and prejudice to overcome the default.

## II.

First, Cuff defaulted his breach claim. Courts must abide by the "general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Reed v. Farley*, 512 U.S. 339, 354 (1994). The rule applies equally to claims a defendant discovers for the first time after his sentence. *See Massaro*, 538 U.S. at 504; 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Criminal § 631 (5th ed.). That is because § 2255 relief is reserved for "a narrow range of injuries that *could not have been raised* on

direct appeal." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (mem.) (per curiam) (emphasis added).

The "*only*" exception to the general procedural default rule is the "narrow exception [for] claims of ineffective assistance of counsel at trial and *only* when, under state law, those claims must be raised in an initial-review collateral proceeding." *Davila v. Davis*, 582 U.S. 521, 530 (2017) (emphasis added) (quotation omitted); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (procedural default rules apply to federal habeas petitions under § 2255). *Only* means *only*: We cannot "extend[] [this] narrow exception [for IAC claims] to new categories of procedurally defaulted claims." *Davila*, 582 U.S. at 529–30. As the leading treatise on Federal Courts puts it:

> In a collateral attack under § 2255, the district court may not consider *any* matter that the petitioner should have raised at trial *or* on direct appeal and did not. The Supreme Court has recognized an exception to this general rule for claims of ineffective assistance of counsel, which need not be raised until collateral review. Outside the context of ineffective assistance claims, the district court is *barred* from considering claims not previously raised unless the petitioner can show both cause for not raising the claim and prejudice.

3 Wright & Miller, *supra*, § 631 (emphasis added). There's no exception for breach of plea agreement claims.

This circuit has also held on multiple occasions that the procedural default bar applies to breach of plea agreement claims. *See United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019); *United States v. Sullivan*, 241 F. App'x 217, 218 (5th Cir. 2007) (per curiam); *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (per curiam); *United States v. Townley*, 114

F.3d 1182, 1182 (5th Cir. 1997) (unpublished) (per curiam); *United States v. Suddeth*, 26 F.3d 1118, 1118 (5th Cir. 1994) (unpublished) (per curiam).[1]

All agree that Cuff knew about the alleged breach before he filed his appellate brief to challenge the conviction and sentence in the Louisiana case. But he said nothing about the alleged breach in his brief. Therefore, he defaulted the breach claim. The majority does not dispute this point.

## III.

Because Cuff procedurally defaulted his claim by failing to raise it on direct review, he can raise this claim "in habeas *only* if [he] can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quotation omitted) (emphasis added). Cuff never argues that he is actually innocent. That means Cuff can *only* overcome his default if he can show both cause *and* prejudice. But Cuff cannot prove either (A) cause or (B) prejudice, (C) the majority's counterarguments notwithstanding.

## A.

First, Cuff cannot show cause. The Supreme Court has "explained clearly that 'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). And a lawyer's choices—so long as they do not constitute unconstitutionally ineffective assistance of counsel—are attributable to the prisoner. *See id.* at 752. That is why the Supreme Court has determined on multiple occasions that counsel's failure

---

[1] Neither *United States v. Cates*, 952 F.2d 149 (5th Cir. 1992), nor *United States v. Borders*, 992 F.2d 563 (5th Cir. 1993), is to the contrary. Neither discussed the procedural bar at all. And these cases pre-date *Davila*, holding that the only exception to procedural default is for ineffective assistance of counsel claims.

to pursue an objection, for whatever reason, does not establish cause to excuse a procedural default. *See, e.g.*, *id.* at 753; *Smith v. Murray*, 477 U.S. 527, 535 (1986); *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 91 n.14 (1977).

For example, in *Murray v. Carrier*, the question presented was "whether a federal habeas petitioner can show cause for a procedural default by establishing that competent defense counsel inadvertently failed to raise the substantive claim of error." 477 U.S. at 481. The Court held that any failure on the part of the attorney to raise a claim—whether deliberate or inadvertent—does not amount to cause. *Id.* at 487–88; *see also id.* at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). So long as the default was within defense counsel's control, and counsel was not ineffective,[2] a prisoner cannot show cause for the default. *See id.* at 487; *see also Coleman*, 501 U.S. at 753; *Wainwright*, 433 U.S. at 91 n.14.

Instead, cause requires a showing of some "objective factor external to the defense imped[ing] counsel's efforts to comply" with the default rules. *Carrier*, 477 U.S. at 488; *accord Coleman*, 501 U.S. at 753. In other words, the prisoner must demonstrate that the "legal basis of the claim [he] now presses on federal habeas was unavailable to counsel at the time of the direct appeal." *Smith*, 477 U.S. at 537; *see also Carrier*, 477 U.S. at 486.

And these rules apply equally to procedural defaults *on appeal* as well as to those at trial. *See Smith*, 477 U.S. at 533; *see also Carrier*, 477 U.S. at 489.

---

[2] A constitutionally ineffective counsel is the equivalent of "no counsel at all." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 685 (1984). So long as the counsel was acting as a counsel, his choices are attributable to the prisoner and cannot constitute cause for a default.

No. 18-30694

The prisoner in *Carrier* urged the Supreme Court to adopt a different standard for procedural defaults on appeal. 477 U.S. at 490. The prisoner contended that "the concerns that underlie the cause and prejudice test are not present in the case of defaults on appeal." *Ibid*. But the Supreme Court found this argument "unpersuasive." *Ibid*. The Court held "that the cause and prejudice test applies to defaults on appeal as well as to those at trial"; simply put, "the standard for cause should not vary depending on the timing of a procedural default." *Id*. at 491. That's because "[f]ailure to raise a claim on appeal" likewise "reduces the finality of appellate proceedings" and "deprives the appellate court of an opportunity to review trial error." *Ibid*. As the Court summarized its holding,

> counsel's failure to raise a *particular* claim *on appeal* is to be scrutinized under the cause and prejudice standard . . . . Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default *even when that default occurs on appeal* rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Id*. at 492 (emphasis added). These rules apply with equal force in the federal habeas context. *See Frady*, 456 U.S. at 167–68.

And these rules make especially good sense here, where Cuff had the opportunity to raise his breach claim on direct appeal and obtain the *exact* remedy he now seeks. The Supreme Court and this court have repeatedly examined *breach of plea agreement claims* never presented in the district court for plain error. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129 (2009); *United States v. Cluff*, 857 F.3d 292 (5th Cir. 2017); *United States v. Kirkland*, 851 F.3d 499 (5th Cir. 2017); *United States v. Williams*, 821 F.3d 656 (5th Cir. 2016); *United States v. Hebron*, 684 F.3d 554 (5th Cir. 2012); *United States v. Puckett*, 505 F.3d 377, 383 (5th Cir. 2007); *United States v. Munoz*, 408 F.3d

No. 18-30694

222 (5th Cir. 2005); *United States v. Brown*, 328 F.3d 787 (5th Cir. 2003); *United States v. Reeves*, 255 F.3d 208 (5th Cir. 2001); *United States v. Branam*, 231 F.3d 931 (5th Cir. 2000). And this court has awarded defendants who pursue their breach claims for the first time on direct appeal the remedy Cuff seeks—*i.e.*, a choice between resentencing before a different judge or withdrawal of the plea. *See, e.g.*, *Williams*, 821 F.3d at 658; *Munoz*, 408 F.3d at 226, 229.

These rules leave no room for Cuff's claim in federal habeas. Even if he can show that he did not have notice of the breach prior to his sentencing, he plainly had notice on appeal. Nothing prohibited, or even hindered his counsel, from presenting this claim to the court of appeals and attaining the remedy he now seeks. *See Carrier*, 477 U.S. at 492. As the majority agrees, his counsel was not ineffective. Thus, any "ignorance," "inadvertence," or "deliberate decision" on their part in failing to raise this claim on direct appeal does not amount to cause. *Id.* at 487.

Cuff's counterargument is that he did not know about the Western District of Texas indictment until his arrest in August 2012, so the external factor of ignorance prevented him from raising the breach claim before he was sentenced in the Western District of Louisiana in July 2012. He cites his Louisiana pre-sentence report that did not include this pending charge. And he offers a statement from his attorney that he did not know about the breach prior to his sentencing.

But as noted above, the record shows that Cuff had notice in January 2012. First, a detainer was lodged against him for the Texas case while he was in the Bossier Parish Medical Facility on January 9, 2012. The U.S. District Clerk, U.S. Magistrate Judge, U.S. Pre-Trial, and U.S. Marshals Service were all notified. Second, the Texas sealing order said the indictment would remain sealed until Cuff was arrested. And the day after the detainer was

20

No. 18-30694

lodged, January 10, 2012, the Texas indictment was unsealed. He had notice then—six months before his sentencing in the Louisiana case. Accordingly, Cuff cannot meet his burden to show cause. *Cf. Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) ("When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation.").

And even if Cuff could show that he did not know about the breach prior to his Louisiana sentencing, that would not excuse his failure to raise his breach claim on direct appeal. He concedes that he knew of the breach on August 29, 2012, just a few weeks after he appealed his Louisiana conviction, three months before he filed his appellate brief, and almost a year before a panel of this court issued a decision. He had plenty of time and notice to raise this issue on appeal. And he admits:

> Upon direct appeal, Cuff's new counsel *were aware* of the Texas prosecution. They *determined*, however, not to pursue the breach of plea agreement claim given this Circuit's caselaw holding that matters not raised before the trial court are not appropriate for appeal, that is, no record below existed on this question for the court of appeals to review.

Blue Brief at 10 (emphasis added). Even though his attorneys had the relevant information to make this claim on direct appeal, they concededly *knew* and *made a deliberate decision* not to raise it. That is an obvious, conscious choice by constitutionally effective counsel; it is attributable to Cuff; and it prevents him from showing cause for the default. *See, e.g.*, *Carrier*, 477 U.S. at 488–89.

## B.

Cuff also cannot show prejudice for two, independent reasons, each of which is sufficient to deny his breach of agreement claim.

21

First, there was no prejudice because there was no breach of the plea agreement. The non-prosecution clause did not apply to other districts—only the Western District of Louisiana. As we have held:

> It is well established that the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority. . . . [N]ot even a United States Attorney can bind his counterpart in another district to dismiss an indictment . . . .

*United States v. D'Apice*, 664 F.2d 75, 78 (5th Cir. 1981) (quoting *Dresser Indus., Inc. v. United States*, 596 F.2d 1231 (5th Cir. 1979)). The Western District of Louisiana did not have the power to constrain prosecutors in other districts. *See ibid.*

And even if the Western District of Louisiana U.S. Attorney's Office did have the power to bind other districts, the terms of the agreement did not suggest that it did so. Its mere use of the term "Government" in the agreement does not prove otherwise. *See United States v. Johnston*, 199 F.3d 1015, 1021, 1021 n.4 (9th Cir. 1999); *United States v. Salameh*, 152 F.2d 88, 120 (2d Cir. 1998); *United States v. Robison*, 924 F.2d 612, 613–14 (6th Cir. 1991). Cuff relies on his attorney's affidavit, where his attorney said, "It is my opinion that the Government breached its plea agreement with Mr. Cuff." ROA.319. But as this court has previously held, "A defense counsel's subjective belief that a defendant's plea will preclude future prosecution related to an ongoing investigation, even if the defendant relied upon it, does not, without more, immunize him from prosecution." *United States v. McClure*, 854 F.3d 789, 796 (5th Cir. 2017).

Second, Cuff was not prejudiced because he obtained the benefits contemplated by the plea agreement when the Western District of Texas dismissed the indictment. *See United States v. Castaneda*, 162 F.3d 832, 837 (5th Cir. 1998). As the Supreme Court held in *Puckett v. United States*, when

evaluating whether a defendant was prejudiced under the third prong of plain error review, "[t]he defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal . . . or because he likely would not have obtained those benefits in any event." 556 U.S. at 141–42. If that is true in the plain-error context, how much truer is it in the federal habeas context, where prejudice requires an exponentially greater showing. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982) (holding burden to demonstrate cause and prejudice is far "greater than the showing required to establish plain error on direct appeal" (quotation omitted)); *Frady*, 456 U.S. at 164 ("Because it was intended for use on direct appeal, however, the 'plain error' standard is out of place when a prisoner launches a collateral attack . . . .").

What was the benefit of Cuff's Louisiana plea deal? It was dismissal of the Texas indictment, which cured the Government's breach of the non-prosecution promise. We have previously held that dismissal of a second indictment "adequately cure[s]" such a breach. *United States v. Purser*, 747 F.3d 284, 293 (5th Cir. 2014). And that is *exactly* what the Government did here even before today's decision.

Cuff never argues that dismissal of the Texas indictment was too little—just that it was too late. Specifically, Cuff contends that he suffered prejudice in that the late-discovered facts delayed victory on his breach claim (from direct appeal to this § 2255 proceeding). That is wrong because, even on Cuff's version of the facts, he could have prevailed on his breach claim on direct appeal without saying *anything* about it in the district court. *See, e.g.*, *Williams*, 821 F.3d 656. And in any event, Cuff did not have to wait until this § 2255 proceeding to win all of the relief he could possibly hope to win because he got total victory when the Government dismissed the Texas indictment. That dismissal was the benefit of the bargain he made in Louisiana. The Government has already honored it. So I do not understand

No. 18-30694

why Cuff should get the full benefit of the Louisiana plea agreement and then also get to walk away from the deal before paying its costs.

C.

Against the weight of all of this, the majority argues that Cuff may be able to show cause and prejudice because Cuff may not have had the relevant facts before sentencing and therefore could not have raised his breach claim in a Rule 11(d) motion before the sentencing court, like the defendant in *Allen*. With all respect to my learned colleagues in the majority, this is incorrect for seven reasons.

First, the procedural default occurred on November 28, 2012—when Cuff filed his blue brief in the direct appeal from his conviction and sentence in the Louisiana case. *Massaro*, WRIGHT & MILLER, and the other authorities cited in the preceding section make clear that the failure to object *on direct appeal* constitutes the default. And when Cuff filed his direct appeal brief in November 2012, he undisputedly knew about the alleged breach. He undisputedly could have objected to it. He said nothing and thus defaulted the claim. It would not matter whether other defendants (as in *Allen*) could have objected earlier, because Cuff could have objected before the direct-appeal deadline in November 2012.

Second, in any event, Cuff could have objected in the district court just as the defendant could have in *Allen*. The Western District of Louisiana sentenced Cuff in July 2012—at which point Cuff's first arrest on the Texas charges was *six months old*. Recall that the federal grand jury in Texas indicted Cuff in December 2011, and the federal court in Texas ordered that indictment to remain sealed until Cuff was arrested. He was arrested in January of 2012, and that indictment was unsealed at that time. Yet at no point between January and July 2012—between the arrest on the Texas

charge and the sentencing on the Louisiana charge—did Cuff object to the breach.

Third, it is no answer to say that Cuff could not object to the alleged breach in his November 2012 blue brief because his claim "require[d] factual development by a district court." *Ante*, at 8. Cuff could have objected as early as January 2012, when he was arrested on the Texas charges and the Texas indictment was unsealed. But even if one thinks that Cuff did not get the relevant facts until his second arrest in August 2012, he *still* could have objected in his November 2012 blue brief. And the only fact he needed for that alleged breach was the existence of the Texas docket—a fact that he could establish simply by pointing to the docket number.

Fourth, the majority's reliance on prior decisions from this court, where we have not considered issues raised for the first time on appeal, does not support its theory. *See ante*, at 8 (citing *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012) and *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996)). These are civil, not criminal, cases. And again, in the criminal context, the Supreme Court and this court have repeatedly entertained breach claims never raised in the district court under our plain error standard of review. *See, e.g.*, *Puckett*, 556 U.S. 129; *Cluff*, 857 F.3d 292; *Kirkland*, 851 F.3d 499; *Williams*, 821 F.3d 656; *Hebron*, 684 F.3d 554; *Puckett*, 505 F.3d 377; *Munoz*, 408 F.3d 222; *Brown*, 328 F.3d 787; *Reeves*, 255 F.3d 208; *Branam*, 231 F.3d 931. Given this long, nonexhaustive list of precedents, Cuff's counsel had ample notice that relief was available to him on direct appeal. There was no "external impediment preventing counsel from constructing or raising the claim." *Carrier*, 477 U.S. at 492. Any "ignorance" or mistaken reliance on civil cases by Cuff's counsel provide no excuse. *Id.* at 490.

Fifth, it is particularly odd to say that Cuff's counsel reasonably chose not to raise his breach claim on direct appeal given the other claims that same direct-appeal counsel *did* raise. For example, Cuff contended on direct appeal that the district court failed to admonish him that he would have to register as a sex offender. We pointed out that Cuff could have raised that claim in the district court at his rearraignment, so we could only review it for plain error. ROA.215. Cuff also objected to the factual basis for his plea agreement. Again, we pointed out that Cuff could have raised that claim in the district court and failed to do so. *Ibid.* Cuff attempted to raise a claim of prosecutorial misconduct, but "he did not develop the facts supporting this claim, so we [were] not able to review on appeal." ROA.217. And Cuff's direct-appeal brief even attempted to raise the *one* claim—ineffective assistance of counsel—that is *not* defaulted by failure to raise it on direct appeal. *Ibid.* With all respect, it blinks reality that Cuff attempted to raise all these claims for the first time on direct appeal but had a "defensible" belief that he *could not* raise his breach claim. *Ante*, at 9.

Sixth, the majority's contrary rule encourages prisoners to sleep on their rights. It is a bedrock principle of procedural-default doctrine that prisoners should raise their claims at the first conceivable opportunity. *See Frady*, 456 U.S. at 167–68; *Wainwright*, 433 U.S. at 88–90; *Francis v. Henderson*, 425 U.S. 536, 540–42 (1976); *Davis v. United States*, 411 U.S. 233, 239–42 (1973); *Michel v. State of Louisiana*, 350 U.S. 91, 99 (1955); *cf. Engle*, 456 U.S. at 134 (applying procedural default rule even where defense counsel was unaware of constitutional claim at time of trial). But the majority allows Cuff to raise his breach claim after sleeping on it at his July 2012 sentencing and during his subsequent direct-appeal proceeding.

Seventh, the majority's rule encourages courts to make unnecessary constitutional pronouncements. It is a well-settled principle of federal law that we have an obligation to avoid resolving unnecessary constitutional

No. 18-30694

questions. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018); *Crowell v. Benson*, 285 U.S. 22, 62 (1932). Yet our decision in Cuff's direct appeal resolved a constitutional question regarding his mental competency, ROA.214 (citing *Godinez v. Moran*, 509 U.S. 389 (1993)), that would have been completely unnecessary if we had a non-constitutional basis for vacating the plea agreement.

*     *     *

I respectfully dissent.